Attorneys for Plaintiff(s) *is phose*

Luba Hill
200 E 69 ST. 66
NY NY 10021
lubhill@hotmail.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Luba Hill

PLAINTIFF(S)

v.

James T. Hill

DEFENDANT(S).

CASE NUMBER

SACV-07-823JVS(MLGX)

COMPLAINT FOR
Motion of Exhibits for
Motion of Reconsideration;
Reopen; for Default
Judgment  1/22/09

Motion of Exhibits for 1/22/09 Motion

The plaintiff files this separate motion of exhibits to support her claims in this action. She felt that it would be easier to refer to the exhibits. While this court cannot undo and correct what the defendant did previously, she hopes that the court can consider his actions and enter a judgment based on his refusal to comply to court orders in the past. She also asks if possible (because of life time alimony responsibility, that the court consider that in the determination of any judgment

1 of 110 pgs.

Luba Hill
200 E 69 ST. 66
NY NY 10021
lnhill c hotmail.com

United States District Court
Central District of California

Luba Hill                    case no SACV-07-823JVS(MLGx)
    plaintiff
James T. Hill            Exhibit Motion for 1/22/09
    defendant                  Motion

Affidavit of Luba Hill

State of California:

I, Luba Hill, being duly sworn, deposes & says

1. I am over the age of 18 yrs & I believe in the obligations of an oath

2. I submit this affidavit for my motion of exhibits for my 1/22/09 motion

3. I am the plaintiff and my exhusband is the defendant in this case

4. I state under oath that all the exhibits are true and none have been altered except for my hand written notes

5. If necessary I can submit certified copies of any court orders for review.

Luba Hill

Subscribed & sworn to before me, this
__ day of 2009  2009.

Notary Public
My Commission
Expires
3/10/2012

XIE JUN HE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
NO. 01XI6182950
MY COMMISSION EXPIRES 03-10-2012

2.



Home  Career

Did you know that Hovde investme
garnered the highest sale price in s
for a community bank client in Flori

| Investment Banking | Asset Management | Private Equity | Securities | About Hovde | Press & Resources | H |

Overview | M&A Transactions | Rankings | Team & Contacts

Team Bios



**James T. Hill**
Managing Director

Tel: 310.535.9200
Email: jhill@hovde.com

As Managing Director in Hovde Financial's California office, Mr. Hill focuses on providing merger and acquisition, financial advisory and capital raising services to West Coast community banking institutions. He has over 36 years of investment banking experience and has for the last 23 years specialized in providing a full range of investment banking services to community banking institutions.

Prior to joining Hovde Financial, Mr. Hill was a Managing Director at Friedman, Billings, Ramsey in the firm's Irvine, California office. Mr. Hill was also previously Managing Director and Head of the Financial Institutions Group at Sutro & Co., Incorporated in Los Angeles; Senior Vice President at Ryan, Beck & Co.; Managing Director and Head of the Financial Institutions Group of PaineWeber Incorporated; Director-Finance in the Financial Institutions Department of Salomon Brothers; Managing Director in the Investment Banking Department of Warburg Paribas Becker; and a Vice President in the Corporate Finance Department of Smith Barney Harris Upham & Co.

Mr. Hill is a frequent speaker at various industry and professional events and has written articles in industry publications regarding topics specific to financial institutions. He is a 1967 graduate of Harvard College and received his M.B.A. in 1969 from the Harvard Graduate School of Business Administration. In addition, Mr. Hill is licensed with the National Association of Securities Dealers as a general securities representative and general securities principal.

**James T. Hill**
Managing Director

Steven D. Hovde
President and Chief Executive Officer
Director of Investment Banking Operatio

Nickolas J. Barbarine
Principal
Director of Southeast Investment Banki
Operations

Stephen E. Nelson
Principal

James T. Hill
Managing Director

Eugene B. Katz
Senior Vice President

Terry M. Keating
Senior Vice President

Joseph J. Thomas
Senior Vice President

Rory A. McKinney
Vice President

Michael F. Timothy
Vice President

Christopher M. Olsen
Vice President

R. Clark Locke
Vice President

Kevin J. Ryan
Vice President

Joseph N. Gulash
Senior Associate

Andrew Fitzgerald

*Ex B*

# S U P R E M E   C O U R T
## S T A T E   O F   C O N N E C T I C U T

LUBA HILL                               :

VS.                                     :        A.C. 11464

JAMES T. HILL                           :        JULY 27, 1994

## PETITION FOR CERTIFICATION

JOHN R. WILLIAMS
51 Elm St., Suite 409
New Haven, CT 06510
(203) 562-9931

**Attorney for Petitioner**

## QUESTIONS PRESENTED FOR REVIEW

I.   Did the trial court deny the plaintiff her state and federal right to due process of law in an action for dissolution of marriage in which four minor children were involved, by permitting the plaintiff's attorney to walk out of the courtroom at the start of trial, without the plaintiff's knowledge or consent, and by thereupon conducting the trial in the absence of both plaintiff and plaintiff's counsel?

II.   When the trial court's scheduling orders were ambiguous at best, the plaintiff indisputably was unprepared for trial as a result, and unlike the plaintiff the defendant neither suffered nor claimed any prejudice from a delay, did the trial court abuse its discretion in refusing any continuance of the trial?

III. Did the court abuse its discretion by forcing plaintiff to trial when it knew the defendant had refused to provide financial information and that transcripts of the defendant's depositions had not yet been prepared?

IV.   Did the court abuse its discretion by refusing to order a custody study when defendant, who it knew was a transvestite, sought sole custody of the children?

V.   Did the court deny due process when it refused to reopen the case despite evidence of defendant's perjury and fraud?

2

5

## BASIS FOR CERTIFICATION

The issues presented by this case are unprecedented in Connecticut family law. The action, which sought dissolution of a fifteen-year marriage involving four minor children, a house which sold for $3.8 million but netted less than a tenth of that, large amounts of "missing" cash and allegedly no cash income to support four minor children, was mired in a discovery battle when called for trial. The plaintiff and her attorney had been told by the judge that the trial would not go forward until the defendant had complied with financial discovery. They were so unprepared for trial when suddenly ordered to begin evidence that the plaintiff's attorney did not even have his file with him. Yet a motion for continuance of trial was denied and the Appellate Court affirmed despite acknowledging that it could not be ascertained from the printed words of the transcript whether the plaintiff and her attorney actually had been advised that trial would commence on the date at issue.

When the trial began, the plaintiff was with her priest, having fled the courthouse in tears. Her attorney, without moving to withdraw and without the court's permission, was allowed to walk out of the courtroom and abandon both the case and his client . without the imposition of any judicial sanction; and the case was tried to a conclusion in the absence of both the plaintiff and her attorney. Orders were entered respecting the disputed custody of the children, who also were unrepresented, dividing assets, and awarding only $250 per week total support for four children and $1

3

6

per year in alimony -- all with nobody participating but the defendant and his lawyer. The Appellate Court found no due process denial in any of these events.

The ruling of the Appellate Court in this case, if permitted to stand, will reduce this court's holding in Monroe v. Monroe, 177 Conn. 173, 183-84 (1979), concerning the "special responsibility" of courts to assure fairness in the "emotionally-laden circumstances" of dissolution cases, to empty and meaningless words. There has never been a reported Connecticut dissolution of marriage case in which the distress of a party has been more obviously ignored, and the party's anguish more blatantly used to the advantage of her opponent, than this one.

Moreover, the Appellate Court's decision here carves out an exception to Matza v. Matza, 226 Conn. 166 (1993), so large as to consume the holding of the case. While in Matza this court held that once the trial of a matrimonial action has begun a party has "a right to continued representation" by retained counsel, the holding in this case would permit lawyers to evade the Matza rule by the simple expedient of walking out of the courtroom. Allowing this holding to stand will deny to others, as in this case it did deny the plaintiff, due process of law under both state and federal constitutions.

The Appellate Court has in this case decided substantial questions of law in a way not in accord with the applicable law of this court. The public policy implications of the Appellate Court's ruling are grave and require the attention of this court.

4

7

## SUMMARY OF THE CASE

This action for the dissolution of a 15-year marriage involved highly complex financial and psychiatric issues relating to child custody, support and alimony. The defendant husband consistently stonewalled discovery from October 1991 to March 1992. A week before the scheduled trial date, the plaintiff moved for a continuance of the trial to permit her to complete essential financial discovery and to arrange a proper custody study in light of the husband's demand for custody of the minor children. The trial court's response to that motion was highly ambiguous and confusing. As the Appellate Court itself acknowledged, in this case "the meaning of spoken words can not easily be gleaned from transcript pages." 35 Conn. App. at 167.

The plaintiff and her attorney appeared in the court on March 10, 1992, believing that the court would again address the disputed discovery issues which had been plaguing them throughout the litigation. Instead, they were ordered to commence trial immediately. The plaintiff's attorney did not even have his file with him, so certain was he that there would be no trial. In finding no error in thus forcing a trial on that very day, the Appellate Court found it necessary to set aside the plain record and resort to blind trust in the presumed fairness of trial judges:

> Examination of the transcripts is not dispositive of the issue. We were not there and the flavor of the court's remarks cannot be appreciated from reading the cold black and white lines of a transcript. The nuances of voice inflection, gestures and body English are invisible on the pages of a printed transcript.

5

8

35 Conn. App. at 165.

The plaintiff, a 45-year-old immigrant who had stayed at home the entire marriage to raise the parties' four minor children, who suffered from cancerous brain and colon tumors characteristic of Turcot's Symdrome, had no income and no assets separate from those jointly held with the defendant.  The defendant, an investment banker whose income in the year immediately prior to commencement of the dissolution action exceeded $650,000, was unemployed and claimed he was unable to provide more than $110 a week support for the children of whom he nevertheless sought joint custody.  Despite his alleged lack of income, the defendant - a fetishistic transvestite who wears expensive women's shoe for erotic purposes - admittedly kept a cash hoard in the Queens apartment of his mistress, charged more than $20,000 worth of merchandise in the six months just before the trial, paid about $11,000 on his American Express account, refused to disclose the details of a secret New York bank account, kept the proceeds of a $200,000 bank loan obtained with the plaintiff's forged signature while testifying that the debt was a joint marital obligation, and consistently had refused to comply with discovery orders in twenty (20) separate categories of financial information.  Less than four weeks prior to trial, the defendant claimed at a deposition that he did not own any women's shoes and had not disposed of any such collection during the previous year; yet four months earlier he had sworn that he did own the shoes and that his use of this $75,000 shoe collection was an issue in his psychotherapy.  The defendant had

6

failed to produce five years worth of promised American Express
records and had failed to explain the disappearance of a $500,000
bonus from his employer and more than $90,000 in checks written to
"cash" during the year after he learned the divorce was
contemplated. Between March 3 and 10, the plaintiff had discovered
that 217 pages of medical claim forms produced by defendant at his
March 3, 1992, deposition had been altered to conceal embezzlement
of money the court had ordered used to pay old medical bills. It
was therefore entirely reasonable that the plaintiff and her
attorney believed the court when it agreed to allow them a
reasonable time to complete trial preparations.

The plaintiff's obvious distress at suddenly being told she
was to start trial immediately is not surprising. Her reluctance
to return to the courthouse later in the day to begin trial with no
evidence, because of that distress, would seem neither unexpected
nor unprecedented. What is truly extraordinary, however, is the
response of her lawyer and the manner that response was handled by
both the trial court and the Appellate Court. The lawyer said he
was leaving, and would not partipate in the trial. The court
cautioned him that his client would be nonsuited if he were to
leave. But the attorney did leave, the court permitted him to do
so, imposed no sanctions upon him, and allowed his absent and
unwarned client and the unrepresented children to be the victims of
the mockery which followed.

7

10

# C O N C L U S I O N

The Petition for Certification should be granted.

Respectfully submitted:

JOHN R. WILLIAMS
51 Elm St., Suite 409
New Haven, CT 06510
(203) 562-9931

Attorney for Petitioner

EXC 1

Anchor Savings Bank

Branch No. 5

date 9/14/ 19 90

received from James G. Hill

the sum of Sixteen Thousand four hundred & fifty seven dollars $16487.02/74

for Mortgage Payments # 407207

☐ cash ☒ check ☐ hold for pickup

by N.Blackwood

thank you!

Customer Signature

DEP 004 4/89R

---

Anchor Savings Bank

Branch No. 5

date 4/15/ 1990

received from James G. Hill

the sum of Sixteen Thousand One Hundred dollars $16,151.74

for Mortgage Service

☐ cash ☒ check

thank you!

Customer Signature

---

Anchor Savings Bank

Branch No. 05

date 7/16 19 90

received from James T. Hill

the sum of dollars $16151.74

for Anchor Mortgage Pmt

☐ cash ☒ check ☐ hold for pickup

by T. Loper

Customer Signature Acct # 407207-0

thank you!

DEP 004 4/89R

---

Anchor Savings Bank

Branch No. 5

date 3/16/ 19 90

received from James S. Hill

the sum of dollars $16,151.74

for Mortgage Payment 407207-2

☐ cash ☒ check ☐ hold for pickup

by

thank you!

Customer Signature

MAR 16 1990
Item # 9
BROADWAY OFFICE
1 — TELLER
ANCHOR SAVINGS BANK
221-1490-0

DEP 004 4/89R

12

HILL  VS  HILL

EX C 2

A     That is correct.

Q     And isn't it true that you received a profit of about eight hundred and fifty thousand dollars on the sale of your previous house?

A     That is correct.

Q     And you've rolled that over into the purchase of your current house.  Is that right?

A     Well, we sold that house for a little less than a million, three.  Yes, before expenses of about six percent.

Q     So, you rolled all of the profit over into your current house?

A     Right.

Q     And the last time that your wife worked was sixteen years ago?

A     Correct.

Q     That is the last time that she was in the job market?

A     Yes.

Q     Now, you testified that you didn't discuss putting the house on the market with your wife until March or April of this year, is that right?

A     That is correct.

Q     Isn't it true that you didn't tell her that the mortgage was in arrears until you were served with foreclosure papers?

A     That is not true.     N.T.

I insisted on putting home on market when we were served B foreclosure papers. April 91

*Egaw on page 8/29.*

*EXD*

DOCKET NO. FA-91-0283614-S

| | | |
|---|---|---|
| LUBA N. HILL | ) | SUPERIOR COURT AT STAMFORD |
| v. | ) | JUDICIAL DISTRICT OF STAMFORD/ NORWALK |
| JAMES T. HILL | ) | OCTOBER 17, 1991 |

FINANCIAL AFFIDAVIT
OF
LUBA N. HILL

| | |
|---|---|
| STATE OF CONNECTICUT | ) |
| COUNTY OF FAIRFIELD | ) ss:  Greenwich |

LUBA N. HILL, being duly sworn, deposes and says that the following is a statement of my income, monthly expenses, assets and liabilities:

I.   INCOME

1.   Monthly Income from Principal Employment          None

Net Monthly Wage:                                      -0-

TOTAL NET MONTHLY INCOME                          $   -0-

GILBRIDE, TUSA, LAST & SPELLANE · Attorneys At Law
Three Pickwick Plaza · P.O. Box 658 · Greenwich, Connecticut 06836 · Juris No. 101760

14

V.   SUMMARY

    I.   TOTAL NET MONTHLY INCOME            -0-

    II.   TOTAL MONTHLY EXPENSES        $35,135.02 +

    III.   TOTAL LIABILITIES            Unknown

    IV.   TOTAL ASSETS         $2,013,352.00

_____
LUBA N. HILL

Subscribed and sworn to before me
this 17 day of October, 1991.

_____
EILEEN M. ELLSWORTH
Commissioner of the Superior Court

GILBRIDE, TUSA, LAST & SPELLANE • Attorneys At Law
Three Pickwick Plaza • P.O. Box 658 • Greenwich, Connecticut 06836 • Juris No. 101760

15

EXE

DOCKET NO. FA 91 0283614 S  :  SUPERIOR COURT

             :

LUBA N. HILL,      :  JUDICIAL DISTRICT OF

     Plaintiff, :  FAIRFIELD

  vs.        :

             :  AT BRIDGEPORT

JAMES T. HILL,      :

     Defendant. :  SEPTEMBER 1, 1991


**SWORN FINANCIAL STATEMENT OF DEFENDANT JAMES T. HILL**

I.  INCOME

  A.  Income from Principal Employment: None

  Gross Monthly Wages:     $ -0-

  Currently unemployed

  NET MONTHLY WAGES          $ -0-


  B.  All Other Income (including in-kind compensation,
             gratuities, rents, interest,
             dividends, pension, etc.)

 None


  C.  Total Net Income All Sources (Total A & B)   $ -0-

COHEN AND WOLF, P.C. • ATTORNEYS AT LAW • JURIS NO. 10032<br>1115 BROAD STREET • P O BOX 1821 • BRIDGEPORT, CONNECTICUT 06601 • (203) 368-0211

V.    SUMMARY

    A.    Total Net Income (monthly)    $    -0-
    B.    Total Cash Value All Assets    1,532,188.00
    C.    Total Liabilities    302,891.00
    D.    Total Monthly Expenses    38,181.00

VI.   CERTIFICATION

    I hereby certify that the foregoing statement is accurate to the best of my knowledge and that I can, if requested, submit documentation for all assets, liabilities and expenses listed above.

_____
               James T. Hill

SUBSCRIBED and SWORN to before me
this _____ day of September, 1991.

_____
Richard G. Kent, Esq.
Commissioner of the Superior Court

COHEN AND WOLF
ATTORNEYS AT LAW
1115 BROAD STREET • P. O. BOX 1821 • BRIDGEPC. CONNECTICUT 06601 • (203) 368-0211 • JURIS NO. 10032

ExF


**Zillow.com**
Your Edge in Real Estate

## 7 Sea View Ln
Newport Coast CA 92657
-- beds, -- baths, -- sq ft
Zestimate®: $3,751,500

My Estimate:

Monthly Payment: $ 18,116 edit

### Bird's Eye View



### Home Info
**Public Facts:**
• Single family

### Neighborhood: 92657

**Nearby Schools:**

**District:**
--
**Primary:**
 Newport Coast Elemen ...
**Middle:**
 Thurson Middle Schoo ...
**High:**
 Corona del Mar High ...

 See more Newport Coast schools

### Charts & Data

**ZESTIMATE®:**
**$3,751,500**
Value Range: $3,563,925 -
$5,327,130
30-day change: $554,500
Zestimate updated: 01/19/2009



### Last sale and tax info

**Sold 08/27/2001:**
 $1,285,000 *
**2008 Property Tax:**
 $16,594

* Transaction not included in

*EX G*

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌   **51.00**

**2006000777848 04:12pm 11/16/06**

113 28 D11 16

0.00 0.00 0.00 0.00 45.00 0.00 0.00 0.00

*FUT*

After Recording Return To:

Mortgage Resource Network
ATTN:  Post Production Review Unit ID 2278
14800 Landmark Blvd., Suite 400
Dallas, TX  75254

Prepared By:

Robertson & Anschutz
10333 Richmond Avenue, Suite 550
Houston, TX 77042

*49037422*

# DEED OF TRUST

Loan No. 06-013927
MIN No. 1002133-0000016637-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)      "Security Instrument" means this document, which is dated  November 09, 2006,  together with all Riders to this document.

(B)      "Borrower" is James T. Hill, an Unmarried Man.  Borrower is the trustor under this Security Instrument.

(C)      "Lender" is Franklin Bank, SSB. Lender is a State Savings Bank organized and existing under the laws of the State of Texas. Lender's address is  9800 Richmond Avenue, Ste. 680, Houston, TX 77042.

(D)      "Trustee" is Anthony Nocella.

(E)      "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)      "Note" means the promissory note signed by Borrower and dated  November 09, 2006.  The Note states that Borrower owes Lender One Million Seven Hundred Five Thousand  Dollars (U.S. $1,705,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  December 01, 2036.

(G)      "Property" means the property that is described below under the heading "Transfer of Rights in the Property.

(H)      "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)      "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider                    [X] Planned Unit Development Rider

(J)      "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)      "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)      "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)      "Escrow Items" means those items that are described in Section 3.

*EXH*

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE INS Co

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
James T. Hill
7 Sea View Lane
Newport Coast, CA 92657

Recorded in Official Records, County of Orange
Gary L. Granville, Clerk-Recorder

**10.00**

20010596584 03:53pm 08/27/01
103 49 G02 3
1413.50 0.00 0.00 0.00 4.00 0.00 0.00 0.00

Space Above This Line for Recorder's Use Only

A.P.N.: 477-141-09          Order No.: 30029773 — G-A - 1          Escrow No.: 20261-BF

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $1,413.50
[ X ]   computed on full value of property conveyed, or
[   ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[x]   uninorporated area;   [   ] City of _Newport Coast_, and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**David L. New and Jan E. New, Trustees of The David L. New and Jan E. New Family Trust Dated March 2, 1993**

hereby GRANT(S) to James T. Hill, an Unmarried Man

the following described property in the _area_ of Newport Coast, County of Orange State of California;

Lot 63 of Tract No. 14859 in the County of Orange, State of California, as shown on a map recorded in Book 733, Pages 38 to 45 inclusive of Miscellaneous Maps, records of Orange County, California. As more particularly described in Exhibit "A" attached hereto and made a part hereof

The David L. New and Jan E. New Family
Trust Dated March 2, 1993

By: _____ Trustee
David L. New, Trustee

By: _____ Trustee
Jan E. New, Trustee

Document Date: _August 2, 2001_

STATE OF CALIFORNIA                    )SS
COUNTY OF _ORANGE_                     )
On _August 20, 2001_   before me, _Barbara A. Morris, Notary Public,_
personally appeared _David L. New and Jan E. New_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

BARBARA A. MORRIS
Commission # 1259856
Notary Public - California
Orange County
My Comm. Expires Apr 19, 2005

Mail Tax Statements to:   SAME AS ABOVE   or   Address Noted Below

EX I

FA91 028 36 14 S                :    SUPERIOR COURT

LUBA N. HILL                    :    JUDICIAL DISTRICT OF FAIRFIELD

          v.                    :    AT BRIDGEPORT

JAMES T. HILL                   :    JUNE 7, 1995


### MEMORANDUM OF DECISION ON DEFENDANT'S
### AMENDED MOTION FOR MODIFICATION DATED MARCH 23, 1995

     The defendant ("husband") has moved to modify a child support order

of $670 entered on November 23, 1993, and an alimony order of $365 to

his former wife, the plaintiff ("wife"), a total order of $1,035.  As

the movant, he has the burden to prove a substantial change in his

circumstances or the plaintiff's circumstances since the last order was

entered to the present time pursuant to General Statutes §46b-86(a).


     The hearing was held on April 11 and April 28, 1995, and the

husband was represented by counsel and the wife was pro se.  They both

testified and submitted current financial affidavits.

STATE OF CONNECTICUT
 SUPERIOR COURT
 JUDICIAL DISTRICT OF
 STAMFORD-NORWALK

   MAR 1 0 2000

  CERTIFIED COPY
   SEAL AFFIXED
BY
    ASSISTANT CLERK

Copies of Memorandum Sent to all (6)
Parties Listed in Computer as having

These proceedings have been long and bitter having taken a great deal of judicial resources during the past three years. It would serve no useful purpose to relate those facts again here. This court has recited them in several decisions, which the wife has appealed, the latest being a decision dated April 4, 1995 regarding an accounting and distribution of funds from the sale of the marital home being held in escrow by Cohen & Wolf as trustees pending resolution of the wife's appeal. In the April 4th decision, this court ordered Cohen & Wolf to distribute $148,533.98 to the wife. On April 28, 1995, this court terminated the automatic stay provided for in §4046 of the Connecticut Practice Book and ordered Cohen & Wolf to release these funds to her immediately. In a Memorandum of Decision dated May 23, 1995, the court (Petroni, J.) granted the Trustee' motion for advice and correction and ordered the Trustee to distribute $121,652.90 to the wife (60% share) and $112,340.20 to the husband (40% share).

The court has reviewed the financial affidavits filed by the parties on November 17, 1993 and compared them to their current affidavits. In his 1993 affidavit, the husband listed his net monthly income from employment at $5,299 with expenses of $7,837. His 40% interest in the proceeds of sale of the jointly owned marital home was being held in escrow by Cohen & Wolf as trustees was also listed. The wife's affidavit listed no income from employment and her living expenses exceeded $3,000 a week. Her sixty (60%) interest in the escrow fund was listed as undetermined. The present orders of $670 for child

2

support and $360 for alimony of $365, a total order of $1,030, were based on these past affidavits.

The current affidavit filed on April 11, 1995 listed the husband's monthly income at $4,226.52 and expenses at $8,253.54. The wife's affidavit filed on the same date lists no income from employment, expenses of $3,355 a week and no cash assets. She lists substantial debts and testified she and her children were presently being evicted for non-payment of rent.

The court finds a substantial change in the wife's financial circumstances occurred on May 30, 1995, when she received $121,652.90 from Cohen & Wolf, Trustees, as her sixty (60%) percent share of the escrow fund. The court also finds the husband's current monthly net earnings of $4,226 are about twenty (20%) less than the $5,299 he earned on November 23, 1993, which is a substantial reduction in his net monthly earnings.

The husband has assigned his distributive share of $112,341.20 (40%) to Cohen & Wolf to pay his attorney's fees which now exceed $180,000; therefore, these funds are not available to him.

After finding a substantial change of circumstances of either party has occurred under §46b-86a, the court is required to consider the current child support guidelines mandated by §46b-215b(a) and the

3

statutory criteria in §46b-82 of the General Statutes, the alimony statute, and arrive at a fair and equitable order for child support and alimony. Favrow v. Vargas, 231 Conn. 1 (August 16, 1994); Borkowski v. Borkowski, 228 Conn. 729 (1994). A modification order must be based on current net income or available assets. Fahy v. Fahy, 227 Conn. 505 (1993).

Based on the foregoing findings, the court enters the following orders:

1.  The husband shall pay the wife $430 a week in child support in accordance with the child support guidelines and alimony of $300 a week for a total order of $730 a week payable biweekly, on the 2nd and 16th of each month, effective as of the date of this modification. The child support order is based on the husband's net income of $1,032 a week.

    The court has equalized the balance of the husband's weekly income of about $600 in arriving at a periodic alimony order to the wife of $300 a week, which the court finds fair and equitable.

    The husband must adjust his current living expenses, listed as $8,253.53, to meet these child support and alimony obligations since the support of dependents is a primary obligation. Favrow v. Vargas, 222 Conn. 699, 714 (1992).

2.  An immediate wage withholding order shall enter. The defendant and his attorney have agreed to sign the a voluntary wage withholding

4

forms with the defendant's employer, Ryan R. Beck & Co., in New Jersey to insure compliance with this modification order.

3. The defendant shall equally share with the wife any net bonus, after taxes, which he may receive during in 1995 and in any future year. He shall immediately send the wife verification of any bonus after it is paid to him by his employer.

3. The defendant shall also file a copy of his federal income tax return by May 1st of each year.

4. On or before June 2, 1995, the husband filed copies of certain money orders paid to the wife as proof of compliance with this court's finding of contempt against him as set forth in the memorandum of decision dated December 29, 1994. The court has retained jurisdiction of this finding of contempt to insure compliance with said decision.

Orders shall enter as set forth above.

_____
ROMEO G. PETRONI, JUDGE

5

25

EX J

his
Pacific Palisades
5 bedroom home



neighbor
low
income
housing



our apt 1 of 4
1 yr 99-00 →



EX K

## POSTAL MONEY ORDER

SERIAL NUMBER 01150014205   YEAR, MONTH, DAY 98-10-09   POST OFFICE 900641   U.S. DOLLARS AND CENTS *560.00¢

AMOUNT **FIVE HUNDRED SIXTY DOLLARS & 00¢** ******

PAY TO *Luba N. Hill*
ADDRESS *40 W Elm St Apt 4M*
*Greenwich CT 06830*

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
FROM *James T. Hill*   CLERK 0012
ADDRESS *P.O Box 642327*
*Los Angeles CA 90064*

C.O.D. NO. OR USED FOR *Alimony & support for period 9/18/98 to 10/2/98 & Jennifer Hills Medical Card*

⑆00000800 2⑆  011500142 05⑈

## POSTAL MONEY ORDER

SERIAL NUMBER 01150014227   YEAR, MONTH, DAY 98-10-09   POST OFFICE 900641   U.S. DOLLARS AND CENTS *500.00¢

AMOUNT **FIVE HUNDRED DOLLARS & 00¢** ************

PAY TO *Luba N. Hill*
ADDRESS *40 W Elm St Apt 4M*
*Greenwich CT 06830*

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
FROM *James T. Hill*   CLERK 0012
ADDRESS *P.O Box 642327*
*Los Angeles CA 90064*

C.O.D. NO. OR USED FOR *Alimony & support for period 9/18/98 to 10/2/98 & Jennifer Hills Medical Card*

⑆00000800 2⑆  011500142 27⑈

## POSTAL MONEY ORDER

SERIAL NUMBER 01150014216   YEAR, MONTH, DAY 98-10-09   POST OFFICE 900641   U.S. DOLLARS AND CENTS *500.00¢

AMOUNT **FIVE HUNDRED DOLLARS & 00¢** ************

PAY TO *Luba N Hill*
ADDRESS *40 W Elm St Apt 4M*
*Greenwich CT 06830*

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
FROM *James T Hill*   CLERK 0012
ADDRESS *P.O Box 642327*
*Los Angeles CA 90064*

C.O.D. NO. OR USED FOR *Alimony & support for period 9/18/98 to 10/2/98 & Jennifer Hills Medical Card*

⑆00000800 2⑆  011500142 16⑈

27

# FOX & ROACH Realtors

Princeton Junction (609) 799-2022

# HOME PROFILE: 406 Sayre Drive

## Listing Agent: Uma Sehgal (609)452-0834

EXL

| | | | |
|---|---|---|---|
| PRICE: | $296,500 | | |
| TYPE: | Townhouse | AGE: | 6 +- |
| BEDROOMS: | Three | BATHS: | 3 1/2 |
| BASEMENT: | Full, Par finished | ATTIC: | Scuttle |
| PORCH: | Front | Deck: | Yes |
| GARAGE: | 2 Car Attached. | FIREPLACE: | ONE |
| AIR COND: | CENTRAL | FLOORS: | CT/WW |
| ROOF: | ASPHALT | WALLS: | Dry walls |
| EXT. CONST: | Stucco | STORMS/SCREENS: | AS EXISTS |
| LOT SIZE: | NA | TAXES: | $5,641.45 (97) |
| | | | |
| SCHOOLS: | west Windsor Plainsboro | OCCUPANCY: | At Closing |

LOT # 12.06      BLOCK # 3

## DESCRIPTION BY FLOORS:

| | | | |
|---|---|---|---|
| Living Room & Dining Room : | 21'4" X 20"4" | Master Bedroom : | 13'11" X19'10" |
| Kitchen & Family Room: | 21'8" X 19' | Master Bath   With Jacuzzi | |
| | | Bedroom: | 13'5"X14"7" |
| | | Family Bath | |
| | | Bedroom: | 11'X16'4" |
| | | Laundry | |

Powder Room

## SPECIAL FEATURES:

Ending Model on a choice location! Thoroughly upgraded, Roof 1995, High efficiency newer furnace , Part finished basement, wet bar, third bath with shower, extra closets, Built-in Book shelves, Built-in Storage shelves, Built-in Speakers, Designer built-ins in the kitchen, extra lighting, & much more!
Association fee: $275/ monthly. Two months capital contribution required ($550.00 )

HEAT: __GHA____   COST: _____   SEWER: _Public__   WATER: _Public__   ELECT: _____

ITEMS INCLUDED: REFRIGERATOR X STOVE  X DISHWASHER X WASHER  X DRYER X

OTHER ITEMS INCLUDED: All Window Blinds As Exist, Compactor, Garage Door opener, Microwave, Garbage disposal system, Home Security System._____

ITEMS EXCLUDED: _____

FINANCING: Cash/ Conv_____

WISH TO RELIST WITH YOU THE ABOVE MENTIONED PROPERTY FOR WHICH WE ARE ACTING AGENTS. IF YOU ARE SUCCESSFUL IN OBTAINING A BUYER, WE WILL PAY HALF OF OUR SIX PERCENT ( 6%) COMMISSION UPON CLOSING.  PLEASE KEEP A LIST OF EACH PROSPECT TO WHOM YOU SHOW THE PROPERTY. ALL APPOINTMENTS AND OFFERS TO BE MADE THROUGH THIS OFFICE. OFFERS ARE TO BE ACCOMPANIED BY CHECK. (SUBJECT TO ERRORS, COMMISSIONS, CHANGE OF PRICE, PRIOR SALE AND WITHDRAWAL WITHOUT NOTICE)

28

PLAN 223

**THREE BEDROOMS/FAMILY ROOM**
*Two & One-half Baths*

EXL

Oval supertub in ceramic tile

Large skylight in vaulted living room

skylight

walk in closet

Dressing
8'-7" x 4'-3"

Master Bath

linen

open to below

Bedroom 3
11'-0" x 16'-4"

Skylight over double vanity in vaulted compartmented master bath

Master Bedroom
15'-11" x 19'-10"

up

wash
dry

Laundry

Bath

linen

open to below

Bedroom 2
13'-8" x 14'-7"

Two-story ceiling with clerestory windows

...ar garage with ...tic door opener

Living Area

Great Room
21'-4" x 20'-4"

Dining Area

2 Car Garage
20'-0" x 22'-0"

up

up

Snack bar

range
oven

Kitchen

lav.

Sliding door to deck or patio

Foyer

Lav.

Full basement

Dinette

Deck

Two-story ceramic tile entry

Kitchen / Family Room
21'-8" x 19'-6"

Dining nook for family meals

fireplace

Wood burning fireplace

# TOWN OF GREENWICH

Town Hall • 101 Field Point Road • Greenwich, CT 06830

Department of Social Services
(203) 622-3800
(FAX) 622-3767

Carol A. Femia, MSW, STB
Commissioner

*E x M*

## REFERRAL

Neighbor-To-Neighbor
248 E. Putnam Avenue
Greenwich, CT 06830

I am referring _____ *Luba Hill* _____ to receive:

*N/A* Emergency Food ☒ Clothing  X Weekly Supplemental Food

for a family of _____ *5* _____.

## Composition:

No. Adults __*1*__  Teenagers __*3*__  Children __*1*__  Infants __*N/A*__

Effective Date: __*5/2/95*__  Ending Date: __*6/30/95*__

## CLIENT: PLEASE NOTE CAREFULLY

- This referral is for gifts distributed by volunteers at Neighbor-To-Neighbor.

- You will not receive any additional services from Neighbor-To-Neighbor.

- If you continue to need Neighbor-To-Neighbor services, see your Social Worker here first.

- Please cooperate with the following Neighbor-To-Neighbor rules:
  1. Thirty (30) minute time limit.
  2. Use only the bags given to you by the Office Manager.
  3. Do not put clothes on the floor.
  4. One coat/jacket per family member – do not put in bags – show to the Office Manager when you leave.

TAKE ONLY WHAT YOUR FAMILY NEEDS.  ALL BAGS SUBJECT TO INSPECTION.

SPANISH & FRENCH TRANSLATIONS ON BACK---->

_____
Social Worker

_____
Division

_____
Date  *5/2/95*

GDSS:
CLB:rv
Rev. 12/92

W-1348
(Rev. 11/91)

**STATE OF CONNECTICUT**
**DEPARTMENT OF INCOME MAINTENANCE**

**APPLICATION VERIFICATION LIST**

Client Name: _Reba Hill_                     Client Number: _7069620_

Please bring in or mail the information listed below by _11-16-95_ so that we can make a decision on your application(s) as soon as possible.

**VERIFICATIONS FOR PROGRAM ELIGIBILITY** - This information is needed to decide your household's eligibility for the program(s) listed. If we do not receive this proof, your application will be denied.

| Provide the items checked<br><br>ELIGIBILITY FACTOR/ITEM REQUIRED | PROGRAM FOR | | | WHO WILL GET | |
|---|---|---|---|---|---|
| | Cash | Medical | Food Stamps | You | DIM |
| Landlord letter enclosed completed by your landlord. | | | | | |
| Wage form completed by your employer (W-35 enclosed) | | | | | |
| Verification of your income from | | | | | |
| | | | | | |
| A copy of your SSI/SSA check. | | | | | |
| A copy of your car registration. | | | | | |
| Bank statements for account # | | | | | |
| at          from          to | | | | | |
| Car registration | ✓ | | ✓ | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**VERIFICATIONS FOR INDIVIDUAL ELIGIBILITY** - This information is needed to decide eligibility for a certain person for the program(s) listed. If we do not receive this proof, the person listed will not receive assistance. In some cases, when a certain person does not receive assistance, the whole household is not eligible to receive assistance.

| Provide the items checked<br><br>ELIGIBILITY FACTOR/ITEM REQUIRED | PERSON FOR<br><br>Name | PROGRAM FOR | | | WHO WILL GET | |
|---|---|---|---|---|---|---|
| | | Cash | Medical | Food Stamps | You | DIM |
| Birth certificate(s) for | Jennifer | ✓ | ✓ | ✓ | ✓ | |
| Social Security card(s) for | Jennifer | ✓ | ✓ | ✓ | ✓ | |
| Alien registration card(s) for | | | | | | |
| Naturalization papers for | | | | | | |

31

# Ryan, Beck & Co.

RBCo

Excellence in Investment and Banking Services

80 Main Street
West Orange, NJ 07052
(201) 325-3000
1-800-342-2325

December 28, 1995

Ms. Luba Hill
191 Lake Avenue
Greenwick, CT   06830

Dear Ms. Hill:

This is to inform you that effective immediately we are cancelling your medical insurance. Payment was due on or before November 15th for your November premium.  As of December 28, 1995 no payment has been received.  Please understand that this cancellation is effective November 1, 1995.

If you have any questions, please feel free to call me.

Sincerely,

Millie Santillo
First Vice President
Director of Human Resources

MS:chj

1228se1

*32*

Bala Cynwyd, PA / West Palm Beach, FL



**CIGNA** HealthCare

April 23, 1998

Laura Hill
47 Lafayette Place, Apt. 6-A
Greenwich, CT 06830

RE:      Termination of Coverage
         Member Name:  **Laura, Jennifer, Leslie & James Hill**
         Member I.D.:  **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**

Dear Ms. Hill:

Per your request, the information below is being provided.

Our records show that the group medical coverage for the above named member through **NNJ League** began on **March 1, 1996** and terminated on **March 1, 1998**.

If you need further clarification of your coverage while you were a member of CIGNA HealthCare, please contact the Member Services Department at (800) 345-9458.  Representatives are available Monday through Friday from 8:00 AM to 6:00 PM to assist you.

Sincerely,

*Angelia Liles*

Angelia Liles
Member Services Representative

33

CIGNA HealthCare Health Plans
Connecticut General Life Insurance Company
CIGNA HealthCare, CIGNA Dental Health

**THE CITY OF NEW YORK**
**HUMAN RESOURCES ADMINISTRATION**
**FAMILY INDEPENDENCE ADMINISTRATION**

F14 ST NICHOLAS     FS
132 WEST 125TH STREET
NEW YORK    NNY 10027

Dial

HILL LUBA
200        EAST 69TH ST          6-G
NEW YORK          NY   10021

212-666-7936
CENTER F14
CASE 00004771979E
UNIT WORKER SJ4

**NOTICE OF
CHANGE OF CENTER**

**AVISO DE
CAMBIO DE CENTRO**

Upon receipt of this notice, your case will be serviced by the new Center whose name and address is listed on the top left corner of this notice. If there is any change in your situation or if you need to call the Center, please use the telephone number on this notice.

Al recibir esta nota, su caso será atendido por el Centro cuyo nombre y dirección aparece arriba en el lado izquierdo de esta nota. Si hay algun cambio en su situación o si necesita comunicarse con el Centro, llame al telefono indicado a la derecha.

Form M-55
Rev. 11/02

**KEEP THIS NOTICE**

34



STATE OF CONNECTICUT
DEPARTMENT OF SOCIAL SERVICES

IDENTIFICATION CARD
FOOD STAMP ACT

ISSUED TO

LUBA HILL

CLIENT NO. CI. ID #2321502
AU ID #70629621

SHOW THIS CARD WHEN YOU
GET OR USE FOOD COUPONS.

PRESENTE ESTA TARJETA CUANDO UD.
OBTIENE O USA CUPONES PARA ALIMENTO.

KEEP THIS FOR FUTURE PURCHASES.
RETENGA ESTO PARA COMPRAS FUTURA.

SEE INSTRUCTIONS
ON OPPOSITE SIDE

LEA LAS INSTRUCCIONES
EN LA PARTE OPUESTA

FOLD

UBC 01998-F

SIGNATURE OF HEAD OF HOUSEHOLD
FIRMA DEL JEFE DE FAMILIA

SIGNATURE OF 2 OTHER MEMBERS
(MUST INCLUDE SPOUSE, IF ANY)
FIRMA DE 2 OTROS MIEMBROS
(DEBE INCLUIR FIRMA DE ESPOSO/A), SI EXISTA)

ADULT MEMBERS WHO WILL BUY AND
USE COUPONS MUST SIGN BELOW.
CUALQUIER MIEMBRO ADULTO QUE
DESEE COMPRAR O USAR LOS
CUPONES DEBE FIRMAR ABAJO.

1. XXXXXXXXXXXXXXXXXXXXXXXXXX

2. XXXXXXXXXXXXXXXXXXXXXXXXXX

FOLD

0333477

W-1304 (Rev. 6/93)

35

tax return, showed that his line 7, wages, salaries, etc., was $647,727.00.   In addition, he had other income that brought his total gross income to $668,309.00 as shown on Exhibit One.

Defendant's Exhibit Two, the tax return for 1989, showed gross income from wages and salaries on line 7 of $390,274.00.   His gross income was $413,923.00 with income from other sources.   The man has substantial earning capacity.

He grew up in Kansas City, Missouri, attended Harvard undergraduate and attended Harvard for a Master's in Business Administration and was on a fellowship there.   He had been with Solomon Brothers before he left to join Paine Webber.   His termination was involuntary, and he has been seeking employment since his termination.   He has found no other job.   He should have made, from November 4, 1991, the date of the court order through November 13 (three days after the hearing), payments in the total sum of $4,500.00 which would have been 18 weeks times $250.00 per week.   His records indicate that he is in arrears on the pendente lite order $755.25 since he paid only $3,744.75. The court finds that amount to be due and orders it to be paid within ten (10) days of the date of this decision.

The major asset of the parties is the real estate owned at 70 Midwood Road, Greenwich, Connecticut.   That property was shown on defendant's Exhibit 3 as a magnificent, colonial-style building presently listed for sale at

A 110

-6-

36

PaineWebber Incorporated
1285 Avenue of the Americas
New York, NY 10019
212 713-43-44
Fax 212 713-1295

Peter E. Christensen
*Managing Director*
*Director of Mortgage Securities*

# PaineWebber

May 23, 1989

Mr. James Hill
70 Midwood Road
Greenwich, CT   06830

Dear Jim:

We are pleased to offer you a position as Managing Director within the Fixed Income Division of PaineWebber Incorporated.

Your salary will be at the rate of $150,000 per year and you will *~in the form of loan~* receive $500,000 Advanced Compensation/to be forgiven on January 2, 1990.  Your responsibility will be manager of the Thrift Banking Group reporting to Peter Christensen and Robert Pangia.

We look forward to your working with us at PaineWebber.

Best regards,

Peter E. Christensen

UNDERSTOOD & ACCEPTED

Jim Hill

PEC:mag

37

EX O₂

# PaineWebber

1000 Harbor Boulevard, Weehawken, N.J. 07087
Established 1879 • Member of all principal security, commodity and option exchanges.

| DATE | CHECK NO. |
|---|---|
| 07-07-89 0101 | 00464019 $706144134 |

| DATE | INVOICE/CREDIT MEMO | TYPE | DESCRIPTION | GROSS | AMOUNTS DISCOUNTS | NET |
|---|---|---|---|---|---|---|
| 062989 | 1872010 | ACA | | 50000000 | | 50000000 |
| | | | TOTAL ▶ | 50000000 | | 50000000 |

THE ATTACHED CHECK IS IN PAYMENT FOR ITEMS DESCRIBED ABOVE. DETACH AND RETAIN THIS STUB FOR YOUR RECORDS.

# PaineWebber

1000 Harbor Boulevard, Weehawken, N.J. 07087
Established 1879 • Member of all principal security, commodity and option exchanges.

| 62-20 311 | CHECK NO. 00454019 |
|---|---|

ACCOUNTS PAYABLE

00464019

FIVE HUNDRED THOUSAND DOLLARS NO CENTS

| PAY TO THE ORDER OF | DATE | CHECK AMOUNT |
|---|---|---|
| HILL, JAMES | 07-07-89 | ✱✱✱✱✱✱500,000.00 |

CITIBANK (DE)

This check is not negotiable after 180 days from date issued.

AUTHORIZED SIGNATURE

CHK-2285 REV. 4 / 88

⑈00464019⑈ ⑆031100209⑇ 388236 27⑈



THE LAW OFFICES OF
## JOHN R. WILLIAMS

51 ELM STREET, SUITE 409
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
FACSIMILE (203) 776-9494

JOHN R. WILLIAMS
DIANE POLAN
DAVID B. BACHMAN
KATRENA ENGSTROM
——
MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT
LESLIE ARTHUR
OFFICE MANAGER



October 5, 1993

Hon. Donald A. Browne
State's Attorney
Superior Court
1061 Main Street
Bridgeport, CT 06604

### RE: JAMES T. HILL

Dear Don:

For the past several months, I have been representing Mrs.
Luba Hill, the plaintiff in a dissolution of marriage action
pending in the Superior Court at Bridgeport under Docket No. FA-
91-0283644.  In the course of that representation, a quantity of
evidence has come to my attention strongly suggesting that the
defendant, James T. Hill, may have committed the crimes of
perjury (Conn. Gen. Stat. § 53a-156), false statement (Conn. Gen.
Stat. § 53a-157), and larceny (Conn. Gen. Stat. § 53a-119).

Enclosed herewith are transcripts and exhibits from that
litigation which show the following:

A.  In testimony before Judge Moran on July 13, 1993, Mr.
Hill admitted that on February 21, 1992, he signed and filed in
the Superior Court at Bridgeport a financial affidavit swearing
that he had no income from employment, that his net income from
unemployment compensation was $782.60, that he received no money
at all from in-kind compensation, gratuities, rents, interest,
dividends, pension, etc., that his total net income from all
sources was $782.60, and that his total cash assets were less
than $600.  He further admitted that he filed a similar affidavit
with the same court on March 17, 1992.  Yet he also admitted that
within less than thirty (30) days prior to the date on which he
signed his February 21, 1992, financial affidavit aforesaid he
had received and cashed for his own benefit insurance checks
totalling $23,101.25.  He further acknowledged that he had been
bound by a prior order of the Superior Court, to which he had
agreed, to turn over all that money to a trustee for the benefit
of his family but that he instead kept the money and used it for

his own purposes.  (7/13/92 Transcript, pp. 41-67)  Copies of all the checks are marked as exhibits in the aforesaid proceeding. Copies of two, in the amounts of $10,895 and $12,205, are enclosed herewith along with copies of the two financial affidavits described above.

   B.  Despite the facts revealed on July 13, 1993, as noted in Paragraph A, above, Mr. Hill testified on March 3, 1992, that he had received no insurance payments since 1990.  (3/3/92 Transcript, p. 336)

   C.  Despite the facts revealed on July 13, 1993, as noted in Paragraph A, above, Mr. Hill testified in court on March 10, 1992, that he had no income and no cash assets of any kind other than the few hundred dollars listed on his aforesaid financial affidavit and that his only source of cash other than his unemployment compensation was money from his father.  He further swore that he had made certain that any and all reimbursements which might be received from insurance companies would be turned over directly to the trustee, as recited above, for the benefit of his children.  (3/10/92 Transcript. pp. 57, 78-79, 82-83)

   D.  Despite the facts revealed on July 13, 1993, as noted in Paragraph A, above, Mr. Hill testified at a deposition in the case on May 11, 1993, that he did not recognize his endorsement signature on an Aetna check dated February, 1992, in an amount in excess of $12,000 and that he could not remember receiving such a sum of money.  (5/11/93 Transcript, pp. 171-73, 187)

   E.  In further testimony before Judge Moran on July 13, 1993, Mr. Hill admitted that in October of 1992 he obtained the sum of $3,250 in cash by signing the name of my client to the title of a Volvo automobile owned jointly by both of them and thereby selling the vehicle and pocketing the entire proceeds. (7/13/93 Transcript, pp. 40-41).


   Don, I know that perjury cases are among the most difficult to prosecute of all criminal cases.  I know, too, that many people feel that perjury is just a part of the way matrimonial cases are litigated and that a certain amount of that sort of thing goes with the territory.  I believe, however, that this is

a truly egregious case.  This man, who has enjoyed the benefits of a good education, good jobs, and many advantages in life, simply feels he can thumb his nose at an oath.  As a lawyer, I feel obligated to bring the matter to your attention.  Although I recognize the many heavy demands on your office, I hope you will consider looking into this case and determining whether it warrants prosecution.

Sincerely,

JOHN R. WILLIAMS

Encl.

James

Summary of IRS "Adjusted Gross Income"

EX R

| | | |
|---|---|---|
| 1986 | $369,471 | |
| 1987 | $499,549 | avg for 5 yrs. = $498,808 |
| 1988 | 542,790 | |
| 1989 | 413,923 | |
| 1990 | $668,309 | |
| 1991 | $~~205,000~~ approx 318,000   6 mo. | |

attorney's fees statute, 46b-56, the custody statute, 46b-56a, joint custody statute, and all other relevant statutes and case law.  Accordingly, the court orders as follows:

1.   The marriage is dissolved on the grounds of irretrievable breakdown.

2.   The court orders that the pendente lite order of Judge Ballen of November 4, 1991, continue in effect so that it is the order of this court that the husband continue to pay each Friday the support and alimony order of $250.00 per week.  Judge Ballen ordered this to be an unallocated order.  This court continues that unallocated order.  The court has considered the statutory child support guidelines and finds that there is reason to deviate from the guidelines since the award of child support under the guidelines would be substantially less than this order. The husband, on the record, said he could not pay any more than he is paying now.  The court finds it would be in the best interests of the children for an amount in excess of the guidelines to continue.  The court finds other equitable factors to deviate from the guidelines since it would be inequitable or inappropriate to follow the guidelines in this case.

A 114

3.   The court finds that the wife is to have as a minimum $1.00 per year alimony so that the unallocated order has as its component $1.00 per year ordered.   The reason for this is that the husband has substantial earning capacity which, although is not presently being used to earn dollars, this court is of the opinion that based on his prior earning experience, he will once again earn substantially.   The wife has no track record of earnings.   She has been a mother and wife during the course of the marriage.   Said alimony shall terminate on the death of the husband, the death of the wife, the remarriage of the wife or the cohabitation of the under the statute.

This court was asked to make this alimony durational.   The court has reviewed the relevant cases and finds that there is no basis for durational alimony in this case based on the testimony obtained.   This court could only speculate and surmise as to what might happen in the future that would allow this woman to be in a position where she did not need periodic alimony.

This court contemplates that when the husband is once again employed the wife will petition this court for an increase in alimony and child support.

allowed under COBRA, and the husband shall pay for the premiums for the first year for the wife. Thereafter, she may have the coverage but she must pay for it herself.

7.  The husband is to maintain life insurance for the benefit of the children in the sum of $750,000.00. The children are to be the equal beneficiaries. As each child reaches the age of 18, the husband may reduce the amount of insurance by 25 per cent. The husband shall carry $750,000.00 worth of life insurance for the benefit of the wife for as long as he is paying her any alimony.

8.  The personal property shown on the husband's financial affidavit in section 2(F) is ordered referred to the Family Relations office for mediation. If the parties are unable to agree as to ownership, the property is ordered sold and the net funds are to be distributed 60 per cent to the wife and 40 per cent to the husband.

9.  No counsel fees are awarded to either party.

10. The wife shall have ownership of the vehicles she presently drives. The husband shall have ownership of the vehicles

A 119

46

EX V₁

| | | |
|---|---|---|
| Docket No. FA 91 0283614 S | : | SUPERIOR COURT |
| | : | |
| LUBA N. HILL, | : | JUDICIAL DISTRICT OF |
|       Plaintiff, | : | FAIRFIELD |
|    vs. | : | |
| | : | AT BRIDGEPORT |
| JAMES T. HILL, | : | |
|       Defendant. | : | MAY 13, 1992 |

### SUPPLEMENT TO MOTION TO OPEN JUDGEMENT AND SET ASIDE NONSUIT

The Plaintiff respectfully presents the American Express bills of James T. Hill. These were given to Luba N. Hill by Mr. Allan Mall after March 10, 1992. They show that Mr. Hill, since July, 1991, has charged $20,965 and has paid on his account $11,517. His purchases include $4,504 of jewelry, $1,467 of ladies clothing, $2,049 of ladies shoes, $2,332 of electronic equipment and $3,969 of restaurant bills. His payments on his account were August 26, 1991 ($5,955), September 25, 1991 ($3,891) and October 25, 1991 ($1,671). He still owes $1,637 in temporary support payments. His November support payments were $520 and December payments were $323. There seems to be a great discrepancy between what Mr. Hill has stated in court and his present lifestyle and spending habits.

_Luba N. Hill_
Luba N. Hill

### CERTIFICATION

This is to certify that a true and correct copy of the foregoing has been delivered, ~~in hand,~~ on the date hereof, to:
Sent

Richard Albrecht
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06601

_Luba N. Hill_
Luba N. Hill

47

EX V2

LH

- week ending - support 91/92   he was ordered to pay "250
                 paid -      owes   a week - unemployed -
                                    claimed only had
                                    unemployment check

| week ending | paid | | | owes |
|---|---|---|---|---|
| 11/4 | "60 | | | 190 |
| 11/11 | "60 | | | 190 |
| 11/18 | "125, | "50 | | 75 |
| 11/25 | "125, | "100, | | 25 |
| 12/2 | "23, | "80, | | 147 |
| 12/9 * | | 0 | | 250 |
| 12/16 | "50, | "30 | | 170 |
| 12/23 ☆ | | 0 | | 250 |
| 12/30 | "100, | "40 | | 110 |
| 1/6 | "20, | "100, | "50 | 80 |
| 1/13 | "100, | | | 150 |

as of 1/16 he owes            "1,637
to be paid 1/19 for next week  250
                              1,887

48

EX W

Incorrect Support given on false
financial affidavits

9/1/91 - 0        250

2/21/92 - 183

4/22/93 - 1193      960      80 %

11/17/93 - 1,223     1,035     85 %

12/30/93 - 1,036     1,035     100 %

3/30/94 - 959      1,035     108 %

12/14/94 - 900      1,035     115 %

2/1/95 - 929      1,035     111 %

3/22/95 - 891

4/11/95 - 925

10/31/96 - 1,058

Ex X

FA91 028 36 14 S : SUPERIOR COURT

LUBA N. HILL : JUDICIAL DISTRICT OF FAIRFIELD

v. : AT BRIDGEPORT

JAMES T. HILL : DECEMBER 29, 1994

MEMORANDUM OF DECISION ON
PLAINTIFF'S MOTION FOR CONTEMPT FOR FAILURE
TO PAY ALIMONY AND CHILD SUPPORT (NO. 271)
MOTION FOR COURT ORDER - GARNISHMENT (NO. 272)

The plaintiff, acting pro se, filed these motions which were heard on December 13 and 15, 1994.  Both parties were represented by counsel and testified at the hearing.   The current order required the defendant to pay the plaintiff $365 in alimony and $670 in child support for four children for a total weekly order of $1,035.   The parties agreed the defendant was in arrears to December 15, 1994, or eight weeks, for a total of $8,280.   On December 19, 1994, the defendant made a payment of $3,150 leaving a current arrearage of $5,275.

STATE OF CONNECTICUT
SUPERIOR COURT
JUDICIAL DISTRICT OF
FAIRFIELD

MAR 3 1 1998

CERTIFIED COPY
SEAL AFFIXED

BY _____
                    CLERK

The court ordered and the defendant filed a current financial affidavit dated December 15, 1994 under protest, claiming his constitutional right to self-incrimination was being violated. The defendant's financial affidavit filed on March 30, 1994, lists a net monthly salary of $4,154 based on a gross annual salary of $82,500 earned from his employer Ryan Beck & Co. This affidavit lists no bonus income. In his affidavit dated December 15, 1994, the defendant lists substantially the same net monthly salary but, in addition, lists bonus income totaling $82,500. The first bonus of $32,500 was received in August, 1994 and the second bonus of $50,000 was received in December. He did not list any loans to his employer. The court rejects his testimony that he omitted by mistake listing the loans to his employer and that the bonus totaling $82,500 was in fact income owed to him. There was no evidence presented of a promissory note, no evidence that it is a loan other than the defendant's own testimony and no disclosure on the defendant's financial affidavit filed in March, 1994, although he listed a loan of $41,000 to his father, Niles D. Hill, which is listed in the December affidavit as having been reduced to $7,200.

The court finds the defendant received bonus income of $32,500 in August, 1994 and $50,000 in December, 1994 for a total of $82,500 or net bonus income of $52,387. This bonus income, in effect, doubles his annual income, based on the information

2

51

contained in the defendant's affidavit.   The defendant's net monthly income for 1994 is $8,264.

The court also finds the defendant was capable of complying with the alimony and support orders and that he wilfully and intentionally violated said orders.   Therefore, the court finds the defendant in contempt.   Turgeon v. Turgeon, 190 Conn. 269 (1983).   Court orders must be complied with until they are modified or successfully challenged.   Conn. National Bank v. Investors Capital Corp., 29 Conn. App. 48, 56 (1992).

The court orders the defendant to pay the current arrearage of $5,275 directly to the plaintiff as follows:  $1,275 shall be paid by February 1, 1995 and $1,000 on the first day of March, April, May and June, 1995.   And, in addition, the defendant will continue to pay the current alimony and support orders of $1,035.

The motion for garnishment is also granted.   Section 52-362 of the General Statutes requires the court to issue immediate wage withholding orders to enforce alimony and child support orders unless waived by the parties.   A wage withholding order for alimony and child support payments of $1,035 shall become effective February 1, 1995.

ROMEO G. PETRONI, JUDGE

52

EX Y

| $ Payment (two weeks) : | 600 |
| Annual interest : | 10% |
| Interest (each year) : | 0.1 |

| Payment | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|
| 1 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| 2 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| 3 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 |
| 4 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| 5 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| 6 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 | $3,600.00 |
| 7 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 |
| 8 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 |
| 9 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 | $5,400.00 |
| 10 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| 11 | $6,600.00 | $6,600.00 | $6,600.00 | $6,600.00 | $6,600.00 | $6,600.00 | $6,600.00 |
| 12 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 |
| 13 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 | $7,800.00 |
| 14 | $8,400.00 | $8,400.00 | $8,400.00 | $8,400.00 | $8,400.00 | $8,400.00 | $8,400.00 |
| 15 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 |
| 16 | $9,600.00 | $9,600.00 | $9,600.00 | $9,600.00 | $9,600.00 | $9,600.00 | $9,600.00 |
| 17 | $10,200.00 | $10,200.00 | $10,200.00 | $10,200.00 | $10,200.00 | $10,200.00 | $10,200.00 |
| 18 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 |
| 19 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 |
| 20 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| 21 | $12,600.00 | $12,600.00 | $12,600.00 | $12,600.00 | $12,600.00 | $12,600.00 | $12,600.00 |
| 22 | $13,200.00 | $13,200.00 | $13,200.00 | $13,200.00 | $13,200.00 | $13,200.00 | $13,200.00 |
| 23 | $13,800.00 | $13,800.00 | $13,800.00 | $13,800.00 | $13,800.00 | $13,800.00 | $13,800.00 |
| 24 | $14,400.00 | $14,400.00 | $14,400.00 | $14,400.00 | $14,400.00 | $14,400.00 | $14,400.00 |
| 25 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 | $15,000.00 |
| 26 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 | $15,600.00 |
| TOTAL: | $17,160.00 | $36,036.00 | $56,799.60 | $79,639.56 | $104,763.52 | $132,399.87 | $162,799.85 |

Assuming it is invested in a savings account yielding 3%:

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|
| Interest: | $514.80 | $1,081.08 | $1,703.99 | $2,389.19 | $3,142.91 | $3,972.00 | $4,884.00 |

→ Assumes 10% annual interest

$167,683.85 → Assumes an additional 3% savings acct. interest

S3

EX2

$ Payment (two weeks) :   600
Annual interest :   10%

→ assumes no interest

| Payment | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 |
|---|---|---|---|---|---|---|---|
| 1 | $600.00 | $16,200.00 | $31,800.00 | $47,400.00 | $63,000.00 | $78,600.00 | $94,200.00 |
| 2 | $1,200.00 | $16,800.00 | $32,400.00 | $48,000.00 | $63,600.00 | $79,200.00 | $94,800.00 |
| 3 | $1,800.00 | $17,400.00 | $33,000.00 | $48,600.00 | $64,200.00 | $79,800.00 | $95,400.00 |
| 4 | $2,400.00 | $18,000.00 | $33,600.00 | $49,200.00 | $64,800.00 | $80,400.00 | $96,000.00 |
| 5 | $3,000.00 | $18,600.00 | $34,200.00 | $49,800.00 | $65,400.00 | $81,000.00 | $96,600.00 |
| 6 | $3,600.00 | $19,200.00 | $34,800.00 | $50,400.00 | $66,000.00 | $81,600.00 | $97,200.00 |
| 7 | $4,200.00 | $19,800.00 | $35,400.00 | $51,000.00 | $66,600.00 | $82,200.00 | $97,800.00 |
| 8 | $4,800.00 | $20,400.00 | $36,000.00 | $51,600.00 | $67,200.00 | $82,800.00 | $98,400.00 |
| 9 | $5,400.00 | $21,000.00 | $36,600.00 | $52,200.00 | $67,800.00 | $83,400.00 | $99,000.00 |
| 10 | $6,000.00 | $21,600.00 | $37,200.00 | $52,800.00 | $68,400.00 | $84,000.00 | $99,600.00 |
| 11 | $6,600.00 | $22,200.00 | $37,800.00 | $53,400.00 | $69,000.00 | $84,600.00 | $100,200.00 |
| 12 | $7,200.00 | $22,800.00 | $38,400.00 | $54,000.00 | $69,600.00 | $85,200.00 | $100,800.00 |
| 13 | $7,800.00 | $23,400.00 | $39,000.00 | $54,600.00 | $70,200.00 | $85,800.00 | $101,400.00 |
| 14 | $8,400.00 | $24,000.00 | $39,600.00 | $55,200.00 | $70,800.00 | $86,400.00 | $102,000.00 |
| 15 | $9,000.00 | $24,600.00 | $40,200.00 | $55,800.00 | $71,400.00 | $87,000.00 | $102,600.00 |
| 16 | $9,600.00 | $25,200.00 | $40,800.00 | $56,400.00 | $72,000.00 | $87,600.00 | $103,200.00 |
| 17 | $10,200.00 | $25,800.00 | $41,400.00 | $57,000.00 | $72,600.00 | $88,200.00 | $103,800.00 |
| 18 | $10,800.00 | $26,400.00 | $42,000.00 | $57,600.00 | $73,200.00 | $88,800.00 | $104,400.00 |
| 19 | $11,400.00 | $27,000.00 | $42,600.00 | $58,200.00 | $73,800.00 | $89,400.00 | $105,000.00 |
| 20 | $12,000.00 | $27,600.00 | $43,200.00 | $58,800.00 | $74,400.00 | $90,000.00 | $105,600.00 |
| 21 | $12,600.00 | $28,200.00 | $43,800.00 | $59,400.00 | $75,000.00 | $90,600.00 | $106,200.00 |
| 22 | $13,200.00 | $28,800.00 | $44,400.00 | $60,000.00 | $75,600.00 | $91,200.00 | $106,800.00 |
| 23 | $13,800.00 | $29,400.00 | $45,000.00 | $60,600.00 | $76,200.00 | $91,800.00 | $107,400.00 |
| 24 | $14,400.00 | $30,000.00 | $45,600.00 | $61,200.00 | $76,800.00 | $92,400.00 | $108,000.00 |
| 25 | $15,000.00 | $30,600.00 | $46,200.00 | $61,800.00 | $77,400.00 | $93,000.00 | $108,600.00 |
| 26 | $15,600.00 | $31,200.00 | $46,800.00 | $62,400.00 | $78,000.00 | $93,600.00 | **$109,200.00** |

EX I



LUBA N. HILL  04/90
70 MIDWOOD RD.  203-622-5937
GREENWICH, CT  06830

249

51-110/211

8/1  19 91

PAY TO THE ORDER OF  Brunswick _____  $ 4351 48/100

Four thousand three hundred fifty one   DOLLARS

Union Trust
UNION TRUST COMPANY
GREENWICH OFFICE
GREENWICH, CONNECTICUT 06830

9/1
fall 92

FOR  II James              444052473              Luba N Hill

⑆0211011081⑆  9⑈874 392⑈  0249  ⑈000043514 8⑈



LUBA N. HILL  04/90
70 MIDWOOD RD.  203-622-5937
GREENWICH, CT  06830

247

51-110/211

Aug 1  19 91

PAY TO THE ORDER OF  Greenwich Academy _____  $ 15,575 00/100

Fifteen thousand five hundred seventy five   DOLLARS

Union Trust
UNION TRUST COMPANY
GREENWICH OFFICE
GREENWICH, CONNECTICUT 06830

Laura 9- 0550
Jenny 7- 5250
Julia 4- 4525

FOR                              Luba N Hill

⑆0211011081⑆  9⑈874 392⑈  0247  ⑈0001557500⑈

EX II

*pd solely by Luba Hill*

**PURCHASER'S RECEIPT**
RETAIN FOR YOUR RECORDS

**Union Trust**
A subsidiary of Northeast Bancorp, Inc.

№ 2561355   51-11 / 211

GREENWICH OFFICE, GREENWICH, CT   03/14   91

PAY TO THE ORDER OF   GREENWICH ACADEMY**********************************   ***14,315.0

COPY - NOT NEGOTIABLE

UTC 5005
THE SUM OF   ****14,315 DOLLARS AND MEMORANDUM 00 CENTS

NOTICE: THE PURCHASE OF AN INDEMNITY BOND FOR TWICE THE AMOUNT OF THIS CHECK WILL BE REQUIRED BEFORE ANY TREASURER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED IN THE EVENT IT IS LOST, STOLEN OR DESTROYED

FOR _____

RE:



⑈2561355⑈ ⑆5012⑈1045⑈   0⑈020 634⑈

**PURCHASER'S RECEIPT**
RETAIN FOR YOUR RECORDS

**Union Trust**
A subsidiary of Northeast Bancorp, Inc.

№ 2561354   51-1 / 21

GREENWICH OFFICE, GREENWICH, CT   03/14   91

PAY TO THE ORDER OF   BRUNSWICK SCHOOL**************************   ****4,120.1

COPY - NOT NEGOTIABLE

UTC 5005
THE SUM OF   ****4,120 DOLLARS AND MEMORANDUM CENTS

NOTICE: THE PURCHASE OF AN INDEMNITY BOND FOR TWICE THE AMOUNT OF THIS CHECK WILL BE REQUIRED BEFORE ANY TREASURER'S CHECK OF THIS BANK WILL BE REPLACED OR REFUNDED IN THE EVENT IT IS LOST, STOLEN OR DESTROYED

FOR _____

RE:



⑈2561354⑈ ⑆5012⑈1045⑈   0⑈020 634⑈

*This lawyer was fired 2/6/95.*

EX II 2

# WILLIAMS AND WISE

### ATTORNEYS AT LAW

51 ELM STREET
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
TELECOPIER (203) 776-9494

JOHN R. WILLIAMS
SUE L. WISE

DIANE POLAN
DAVID B. BACHMAN

MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT

LESLIE ARTHUR
OFFICE MANAGER

May 19, 1993

Richard G. Kent, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
Bridgeport, Connecticut 06604

RE: Hill v. Hill
FA-91-0283614

Dear Richard:

I am advised that Ms. Howard, the Head Mistress at
Greenwich Academy, has not yet received from your client the
necessary financial documents to enable her to process the
scholarship applications for the children. As you know, these
documents apparently include your client's most recent tax
return. Since your client did state in court that he would
like the girls to be able to continue at Greenwich Academy if
the financial aspects of the matter can be resolved, I hope
you will encourage him to get these documents to Ms. Howard
immediately. It would be tragic for them to be deprived of
this educational opportunity merely because of your client's
procrastination.

Sincerely,

JOHN R. WILLIAMS

JRW:map
XC: Attorney Cecelia F. Rosenberg

51

20 Halter Lane
Darien, CT 06820
January 7, 1992

EXIII

James T. Hill
70 Midwood Road
Deer Park
Greenwich, CT 06830

Dear Jim:

As per our conversation last night, I will continue to tutor James until January 20. If the balance of James's tutorial bill for August through December is not paid by that date, then I am extremely sorry to say that I will not be able to continue to tutor James.

Since my child care costs have a major impact on the amount of time I can spend tutoring without payment, this decision, while very difficult, has to be made.

James has been such a wonderful pupil to teach that it would be with extreme reluctance that I make a decision to stop tutoring him for solely financial reasons.

I look forward to a positive resolution of this situation. In order to avoid a similar problem going forward, I would like us to agree that all future tutoring bills presented at the end of a tutoring month shall be due upon receipt and if payment of the bill is not received by the 20th of the following month then all tutoring services will cease until such bill is paid.

Sincerely,

Sara Loveland

Sara Loveland

*paid country club "1700 in Dec 91*
*paid less than half support 11 whs 91/92*
*didn't pay tutor "1700*
*had embezzled "27,000 + medical reimburse mts*

58

*My sm's tutor for his learning disabilities, he refused to pay + sm was asked to leave school next semester*

SARA LOVELAND
20 Halter Lane
Darien, CT 06820

January 20, 1992

Student: James Hill

Dates: January 6, 7, 8, 9, 13, 14, 15, 16.

Eight sessions at thirty-five dollars per session..... $140

*Balance forward from*

| | |
|---|---|
| *August* | 105 |
| *Sept.* | 175 |
| *Oct.* | 630 |
| *Nov.* | 490 |
| *Dec.* | 315 |
| *Total due* | $1,855 |

* No charge for sessions January 2 through January 3.

59

onal and confidential

Jim
James Hill
70 Midwood road
Greenwich, Connecticut  06830

EX TV

Presbyterian Hospital in the City of New York

Plaintiff

against

Jim
James Hill,

Defendant

Bronx
County as the place of trial

The basis of the venue is

**Summons with Notice**

Plaintiff   resides at
622 West 168 Street
New York New York 10032
County of New York

To the above named Defendant

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated, Yonkers, New York; October 25, 1991

Defendant's address: 70 Midwood Road
          Greenwich, Connecticut 06830

Notice: The nature of this action is   breach of contract.

Frank J. Cattarrasa, Esq
Attorney(s) for Plaintiff
Office and Post Office Address

705 Bronx River Road
Yonkers, New York  10704
914-776-1700

The relief sought is   damages.

Upon your failure to appear, judgment will be taken against you by default for the sum of $ 3,318.08
with interest from   November   8,   19 89   and the costs of this action.

son's brain surgery bill
refused to pay learning $ 100,000
in 90

60

THE LAW OFFICES OF
**JOHN R. WILLIAMS**

51 ELM STREET, SUITE 409
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
FACSIMILE (203) 776-9494

JOHN R. WILLIAMS
DIANE POLAN
DAVID B. BACHMAN
KATRENA ENGSTROM
NORMAN A. PATTIS
———
MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT
LESLIE ARTHUR
OFFICE MANAGER

November 18, 1993            

Richard G. Kent, Esq.
Cohen & Wolf, P.C.
P.O. Box 1821
Bridgeport, Connecticut 06601

          **RE:  Hill v. Hill**

Dear Richard:

        Enclosed are unreimbursed medical bills for our clients' children as follows:

        1.  A bill from Robin D. Evans, M.D., for treatment provided James on July 26, 1993 in the amount of $55.00.

        2.  A bill from Dr. Richard D. Banyard for an eye examination provided to Laura on September 23, 1993, for which Mrs. Hill paid $115.00.

        3.  A bill from Dr. Kavanaugh of Greenwich Orthopaedic Associates for $174.00 for services provided Laura on September 10, 1993.

        4.  A bill from Anthony Alleva, M.D., for treatment provided Laura on August 26, 1993, in the amount of $112.00.

        5.  A bill for new eyeglasses for Laura on September 24, 1993, in the amount of $246.00.

        The total on these bills is $702.00.

        It is my understanding that pursuant to the Court orders currently in place, your client is obliged to reimburse Mrs. Hill in the total amount of $702.00.  I would appreciate it if you would take care of this within the week.

                        Sincerely,


                        JOHN R. WILLIAMS

JRW:map
Enclosures

<u>Income Taxes:</u>

| | | |
|---|---|---|
| 1990 Federal | $ 9,800* | |
| 1990 Connecticut | 1,400* | |
| 1991 Federal, N.Y., & CT.(net) | 15,000 | |
| Total Income Taxes | | $26,200* |

EXIV

<u>Medical Bills:</u>

| | | |
|---|---|---|
| Dr. E. Cote | $ 1,020 | |
| Dr. L. Morton | 150 | |
| Dr. P. Carmel | 85 | |
| Dr. J. Levy | 90 | |
| Dr. J. Allen | 3,180 | |
| Dr. A. Rausen | 1,530 | |
| Greenwich Radiological Group | 207 | |
| Children's Hospital, Boston | 4,791 | |
| Columbia Presbyterian Hospital | 3,500* | |
| CH Neurology Foundation | 132 | |
| NYU Medical Center | 1,150* | |
| Dana-Farber Cancer Institute | 565 | |
| Stamford Hospital | 503 | |
| Greenwich Hospital | 8,841* | |
| MetPath Labs | 2,800* | |
| Contingency for Miscellaneous | 2,000 | |
| Total Medical Bills | | $30,544* |

Total Outstanding Indebtedness   $179,585

EX IV

**JOSEPH NEWALL, M.D.**
566 FIRST AVENUE
NEW YORK, NEW YORK 10016

212 340-5056

*N.Y. Medical (radiation treatment)*

May 23, 1990

Mr. James T. Hill
70 Midwood Road
Greenwich, CT  06830

Dear Mr. Hill:

I was delighted to see James today and to see his progress.

At the same time, our Billing Office has informed me that our account remains outstanding.  If there are any problems about settling this, I should like to hear from you.

With kind regards.

Yours sincerely,

Joseph Newall, M.D.

JN/dn

*I have over $20,000 of childrens' medical bills he refuses to pay. Some go back to 1990.*

*James diagnosed with malignant brain tumor in Oct 89.*

*We had insurance in 90 & he earned $100,000 this was paid after divorce, not of house money.*

63





**DANA·FARBER**
CANCER INSTITUTE

THE JIMMY FUND

44 Binney Street, Boston, MA 02115

September 25, 1990

Mrs. Luba Hill
70 Midwood road
Greenwich, CT  06830

Re:  HILL, James M.
     DFCI# 14-17-90

Dear Mrs. Hill,

I am writing at your request to re-state my recommendations concerning cancer risk in your other children.

I have been following James since May 1990 in the Jimmy Fund Clinic for follow-up post-treatment for medulloblastoma.  As we have discussed on several occasions in clinic, the fact that your other daughter had a pre-malignant intestinal polyp has raised some concerns about the possibility of a hereditary cancer family syndrome.  We have discussed the fact that it is difficult to do a general surveillance for all types of malignancy in all of the children.  One simple screening test which may be helpful is to examine the complete blood count on a regular basis.  You are aware of a known, though uncommon, association between brain tumors and leukemia.  A complete blood count is an adequate screen test for leukemia.  Although I think that the likelihood that James or the other children will develop that disease is very small,  it seems reasonable to check blood counts every few months, as this is a simple and benign thing to do.

There is no clear formula for assuring that any malignancy arising in James or his siblings will be detected at an early stage.  I think, however, your awareness of the possibility will serve them well.  I will see you back in the Jimmy Fund Clinic in November.

Best wishes to you and your family.

Sincerely,

Nancy Andrews, M.D., Ph.D.
Fellow in Pediatric Hematology and Oncology

NA:dj

64

Case 8:07-cv-00823-JVS-MLG   Document 25   Filed 01/29/09   Page 65 of 110   Page ID

HARLAND S. WINTER, M.D.
Associate in Medicine

Chief of Diagnostic Section

Assistant Professor of Pediatrics
Harvard Medical School



Address correspondence to:
Combined Program In Pediatric
Gastroenterology and Nutrition
Children's Hospital
Hunnewell Ground
300 Longwood Avenue
Boston, MA 02115
Tel. 617-735-6065
Fax. 617-735-6059

EX IV

March 20, 1990

Felice Zwas, M.D.
Greenwich Gastroenterology Assoc.
2 1/2 Deerfield drive
Greenwich, CT 06830

RE:   THE HILL FAMILY
*has been revised to Turcot Syndrom*

Dear Felice,

I know that the Hill family did not come to Boston but I wanted to summarize some of my discussions that I had concerning the problem. I spoke with Dr. Li at the Dana Farber who raised the possibility the Li-Fraumeni Syndrome. He thought that some form of genetic counseling would be appropriate. He had planned to see the family in consultation with Dr. Steve Sallan who is an oncologist at the Jimmy Fund. It would be beneficial to have a consultation regarding the matter. The association of brain tumor and a colonic abnormality in the same family is unusual and if this is a syndrome, other tumors may arise. Dr. Sallan is aware of the family and if they want to speak with him he can be contacted through the Jimmy Fund (telephone number is 617 735-6000, the ask for #121-2-3315).

At this point, I do not think I have to much to add to their management but will be pleased to say hello or provide any information if they decide to follow through. I appreciate your asking me to contribute to their care and if anything else comes up that might be useful, I certainly will give you a call. I'll be interested to learn what happens when you repeat the colonoscopy to see if there is any evidence of dysplasia or atypia in the area of the previous adenoma.

Sincerely,

Harland Winter, M.D.
Associate In Gastroenterology

HW/lw 581

65

THE LAW OFFICES OF
**JOHN R. WILLIAMS**

51 ELM STREET, SUITE 409
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
FACSIMILE (203) 776-9494

JOHN R. WILLIAMS
DIANE POLAN
DAVID B. BACHMAN
KATRENA ENGSTROM
NORMAN A. PATTIS
———
MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT
LESLIE ARTHUR
OFFICE MANAGER

January 13, 1994

*Ex IV*

Richard G. Kent, Esq.
Cohen & Wolf, P.C.
P.O. Box 1821
Bridgeport, Connecticut 06601

    **RE:  Hill v. Hill**

Dear Richard:

    Enclosed are the originals of medical bills for the Hill children.  Please have these bills either submitted to the insurance carrier or paid directly by your client as soon as possible.

        Sincerely,


        JOHN R. WILLIAMS

JRW:map
Enclosures

8/20/96



158

and support of about 70 percent of my net.

Q    No, Mr. Hill, you were not paying alimony and child support for periods of eighteen weeks, but that has nothing to do with this point.

MR. ALBRECHT:  Your Honor --

THE COURT:  Sustained.  You can't answer his answers.

Q    Mr. Hill, you haven't seen your children for a long time, have you?

A    You've interfered with that.

Q    Do you have any pictures of your children?

A    Yes, I do.

Q    I see.  I thought I'd give a picture to the court and to everyone.  It's not an actual picture.  This has to do with the Children's Hospital bill that hasn't been paid since 1990.  Had you ever received copies of it?

A    1990?  I'm sure I must have seen a copy of it.

Q    Why didn't you pay it?

A    I'm not sure that it hasn't been paid.

MR. ALBRECHT:  I don't know what she was showing the witness, Your Honor.

MS. HILL:  It's a picture of our son.  I think Judge Novack should see it.

MR. ALBRECHT:  Your Honor --

THE COURT:  Is that -- is there any objection if we put a picture of the son in the record, Mr. Albrecht?

159

MR. ALBRECHT:  No, Your Honor.

THE COURT:  No?  Okay, it may be marked as the next number.  This is James?

MS. HILL:  Yes, this is James..  This is shortly after radiation when he lost his hair from his eleven hour surgery.

(Whereupon the picture was marked as Plaintiff's Exhibit 39.)

Q    Why didn't you pay the $4,789 Children's Hospital bill?

A    I'm not sure that it wasn't paid.

Q    It's still open.  Why didn't you pay the Children's Hospital bills after that for $2,500?

A    I thought all those bills were to have been taken care of in the stipulation.

Q    But you were the only one receiving bills at that time, Mr. Hill.  Judge Ballen ordered that all of our bills went to your address in Queens, New York.

MR. ALBRECHT:  Objection..

Q    Why did you not pay Spectacles $250 for Laura Hill's glasses in 1993?

A    I don't believe that glasses fall under medical expense.  I don't get medical coverage for my glasses.

Q    So as a result you don't think that you should pay for your children's eyeglasses?

A    Not under the order of the court.

Q    It did not say that you should not pay for

160

1    eyeglasses.

2        A    It said medical expenses.

3        Q    But you feel eyeglasses and eye care is not --

4            MR. ALBRECHT:    Objection.    This    is

5        argumentative.

6            THE COURT:  Sustained.

7        Q    So you do not feel that you're obligated for eye

8    care?

9            MR. ALBRECHT:  Objection.

10       A    My medical plan doesn't care for it.

11           MS. HILL:  She's testifying.

12           THE COURT:  Sustained.

13       Q    Mr. Hill, do you feel you should pay for dentists?

14       A    No.

15       Q    May I ask why?

16       A    It's not covered under my medical insurance.  It's

17   not a medical expense.

18       Q    But Judge Petroni overruled that.

19           MR. ALBRECHT:  Objection.

20           THE COURT:  Yes.  That's argumentative.

21           MS. HILL:  All right.  I will present that next

22       time  we  meet  and  the  transcript  where  he  did

23       overrule that.  John Williams, my infamous lawyer,

24       got that one for me at least.

25       Q    Mr. Hill, did I call for $250 to remove your son's

26   arm cast from his broken arm back in 1993?

27       A    I have no recollection of that.

161

Q    Do you know whether the cast was ever removed?

A    Yes, it was removed, because I saw him since then
and he didn't have a cast on his arm.

Q    Yes.  I took him to the clinic.  I thought that
would be interesting for you to know.

Mr. Hill, why did you not pay Dr. Cote $1,000 to
remove your daughter's braces?

A    Again, orthodontia is not a medical expense --

Q    But you're wrong, Mr. Hill, because --

A    -- particularly when it is cosmetic.

Q    -- because the judge did rule that Dr. Cote's bills
should be paid, and Richard Albrecht here has paid Dr. Cote's
bills for you previously, so how can you possibly say that Dr.
Cote's bills were not to be paid?

MR. ALBRECHT:  Your Honor, this is purely
argumentative.

THE COURT:  It is.

MR. ALBRECHT:  Payments out of the trustee
account is something else.

THE COURT:  Sustained.  You can't argue with
the witness.  You can ask him the questions and
we'll hear what his answers are.

Q    You did not feel that you should pay $1,000 to have
your sixteen-year-old daughter's braces removed?

A    I did not feel that orthodontia expenses were
appropriate medical expenses.

MS. HILL:  We have until 3:15?

70

# LOYOLA SCHOOL

Ex # VI

980 Park Avenue • New York, N.Y. 10028 • (212) 288-3522 • FAX (212) 861-1021

January 2, 2001

Mrs. Luba Hill


Dear Mrs. Hill

As per our conversation on Friday December 29, 2000 about the balance due of $10,660.70 on James account. This balance must be paid before the start of the second semester, which is to start on January 22, 2001 or James will not be able to start this semester.

If you wish to discuss this matter with me or with Father Papaj, please do not hesitate and call us.

Sincerely,

Thomas J. Donovan
Business Manager

**A Recognized School of Excellence**
**United States Department of Education**

*EXVII*

D.N. FA96 0152666 S                     (SUPERIOR COURT

LUBA N. HILL                            (STAMFORD/NORWALK JUDICIAL
                                        (DISTRICT AT STAMFORD
        VS

JAMES T. HILL                           (DECEMBER 11, 1996

### MEMORANDUM OF DECISION
### RE: PLAINTIFF'S MOTIONS FOR CONTEMPT
### #1 - DATED JUNE 7, 1996 (#397)
### #2 - DATED JUNE 7, 1996 - (#398)
### AS AMENDED ON AUGUST 12, 1996
### #3 - DATED JUNE 7, 1996 - (#399)

STATE OF CONNECTICUT
SUPERIOR COURT

3

All motions are granted.

CERTIFIED COPY
SEAL AFFIXED
BY _____ CLERK

The court makes the following findings:

(1)   As of June 6, 1996, the defendant was in arrears in the total amount of $47,210.

      (See attached schedule for computation of the arrearages)


(2)   This sum is subject to following credits:

      A.    $ 5,000  payment made in October, 1996;

      B.    $20,000  payment made on December 5, 1996;

      C.    Payments on arrearages withheld by defendant's employer at the rate of
$125.48 per week from May 6, 1996 through December 15, 1996.

              32 weeks x $125.48 =                      $ 4,015.36


(3)   Balance due on June 6, 1996                       $ 47,210

      Payments thereon through December 15, 1996

72

A.      $ 5,000

B.      $20,000

C.      $ 4,015.36
                                                                    $ 29,015.36
_____                                                      _____

Balance due on December 15, 1996                                    $ 18,194.64


**(4)**      The defendant shall be responsible for the payment of interest at the statutory rate of 10% on the various balances due from December 15, 1994 until payment in full is made.


**(5)**      The balance does not include any sums that may be due the plaintiff for any share of bonuses owed to the defendant prior to June 6, 1996, as previously ordered by the court.  The plaintiff may pursue her claim as to bonuses in the future, at her option.


It is ordered that the balance due shall continue to be reduced by the payments being withheld on the arrearages by the defendant's employer.  Also, the defendant's share of the escrow account held by Cohen and Wolf, Trustees shall be subject to the balance due the plaintiff.


The court reserves the right to order acceleration of the payment of the balance of the arrearages due.

So Ordered.

Decision
entered in
accordance with        novack
the foregoing          _____
12-11-96 (Novack, J)      NOVACK, J.
                          Kaye Assit. clerk
ALL COUNSEL AND PRO SE PARTY NOTIFIED
                                         12-11-96

## SCHEDULE OF ARREARAGE DUE AS OF JUNE 6, 1996.

Hearings on 12/13/94 and 12/15/94

Decisions and Orders on 12/29/94

Arrearage as of 12/15/94 (By Stipulation)                    $  8,280

Payment of $ 3,150 or $3,105                                _____

Balance Found as of 12/15/94                                 $  5,275


Payments:

3/1/95                        $  1,000

4/11/95                       $  1,000

(Part of $ 3,680)

6/1/95                        $  2,000              $  4,000
                                                   _____

Balance Due on 1994 Order

(As of 12/15/94)

Balance Due under Motion #1                          $  1,275


Period of 12/16/94 - 5/2/95

    19 weeks x 1,035 =          $19,665

    Payments                    $16,440

Balance Due through 5/2/95

Balance Due under Motion #2                               $ 3,225

Total Due through 5/2/95                                  $ 4,500

Period of 5/3/95 - 6/9/95

6 wks. x 1,035 =                                          $ 6,210

on 6/7/95 - Modified Order

Effective 6/16/95 -   430/ wk. c/s (670)
                      300/ wk. A    (365)

                      730/ wk.

Period of 6/16/95 - 12/29/95

        28 weeks @ $  730 =                               $ 20,440

Due at end of 1995                                       $ 26,650

Period of 1/5/96 - 6/6/96

        22 weeks x 730 =                                  $ 16,060

Due Through 6/6/96 - Motion #3                           $ 42,710

Summary:    #1    $  1,275
            #2    $  3,225
            #3    $ 42,710

                  $ 47,210

GREENWICH HARBOR INN
500 STEAMBOAT ROAD
GREENWICH CT 06830
(203) 661-9800   FAX (203) 629-4431

LUBA HILL

191 LAKE AVE
GREENWICH, CT   06830

RATE..0.00

FOLIO. 41328 ROOM. 7306   REG#.
ARRIVE 09/02/95
DEPART 12/04/95 ) 3 months
TODAY  12/04/95
#GUESTS 1

| ROOM # | SH | DATE | CD | DESCRIPTION | AMOUNT | BALANCE |
|--------|----|----|----|-------------|--------|---------|
| 7119 | B | 09/02/95 | L | CASH REC. | 99.68 | -99.68 |
| 7119 | C | 09/02/95 | E | ROOM RENT | 89.00 | -10.68 |
| 7119 | C | 09/02/95 | F | ROOM TAX | 10.68 | 0.00 |
| 7306 | B | 09/03/95 | L | CASH REC. | 78.40 | -78.40 |
| 7306 | C | 09/03/95 | E | ROOM RENT | 70.00 | -8.40 |
| 7306 | C | 09/03/95 | F | ROOM TAX | 8.40 | 0.00 |
| 7306 | A | 09/04/95 | L | CASH REC. | 548.80 | -548.80 |
| 7306 | C | 09/04/95 | E | ROOM RENT | 70.00 | -478.80 |
| 7306 | C | 09/04/95 | F | ROOM TAX | 8.40 | -470.40 |
| 7306 | C | 09/05/95 | E | ROOM RENT | 70.00 | -400.40 |
| 7306 | C | 09/05/95 | F | ROOM TAX | 8.40 | -392.00 |
| 7306 | C | 09/06/95 | F | ROOM RENT | 70.00 | -322.00 |
| 7306 | C | 09/06/95 | F | ROOM TAX | 8.40 | -313.60 |
| 7306 | B | 09/07/95 | G | (   ) 625-9833 L 19:28 2.52 | 0.75 | -312.85 |
| 7306 | B | 09/07/95 | G | (617) 655-1653 * 21:27 1.15 | 1.79 | -311.06 |
| 7306 | C | 09/07/95 | E | ROOM RENT | 70.00 | -241.06 |
| 7306 | C | 09/07/95 | F | ROOM TAX | 8.40 | -232.66 |
| 7306 | B | 09/08/95 | G | (   ) 622-9199 L 16:21 1.35 | 0.75 | -231.91 |
| 7306 | C | 09/08/95 | E | ROOM RENT | 70.00 | -161.91 |
| 7306 | C | 09/08/95 | F | ROOM TAX | 8.40 | -153.51 |
| 7306 | C | 09/09/95 | E | ROOM RENT | 70.00 | -83.51 |
| 7306 | C | 09/09/95 | F | ROOM TAX | 8.40 | -75.11 |
| 7306 | A | 09/10/95 | G | (   ) 869-5616 L 10:09 0.93 | 0.75 | -74.36 |
| 7306 | A | 09/10/95 | G | (   ) 869-5616 L 10:37 1.40 | 0.75 | -73.61 |
| 7306 | B | 09/10/95 | G | (617) 655-1653 * 21:52 5.85 | 2.99 | -70.62 |
| 7306 | C | 09/10/95 | E | ROOM RENT | 70.00 | -0.62 |
| 7306 | C | 09/10/95 | F | ROOM TAX | 8.40 | 7.78 |
| 7306 | A | 09/11/95 | L | CASH REC. | 556.58 | -548.80 |
| 7306 | C | 09/11/95 | E | ROOM RENT | 70.00 | -478.80 |
| 7306 | C | 09/11/95 | F | ROOM TAX | 8.40 | -470.40 |
| 7306 | A | 09/12/95 | G | (   ) 869-4547 L 18:37 1.07 | 0.75 | -469.65 |
| 7306 | A | 09/12/95 | G | (   ) 939-1282 L 18:40 2.60 | 0.75 | -468.90 |
| 7306 | B | 09/12/95 | G | (   ) 861-0842 L 20:51 3.32 | 0.75 | -468.15 |
| 7306 | C | 09/12/95 | E | ROOM RENT | 70.00 | -398.15 |
| 7306 | C | 09/12/95 | F | ROOM TAX | 8.40 | -389.75 |
| 7306 | A | 09/13/95 | G | (   ) 801-1714 L 10:10 0.67 | 0.75 | -389.00 |

*EXIX*

```
                    GREENWICH HARBOR INN
                     500 STEAMBOAT ROAD
                     GREENWICH CT 06830
               (203) 661-9800    FAX (203) 629-4431


  LUBA HILL                    FOLIO.163576 ROOM. 7106    REG#.
                               ARRIVE 09/01/99  ) 1 month because
                               DEPART 09/30/99  )
       ,                       TODAY  09/19/99  hotel closed 10/1
                               #GUESTS 1   we were homeless from
       RATE..54.50                 9/99 to 9/00 - 1 year
```

| ROOM # | SH | DATE | CD | DESCRIPTION | | AMOUNT | BALANCE |
|--------|----|----|----|----|----|--------|---------|
| 7106 | C | 09/01/99 | E | ROOM RENT | W | 54.50 | 54.50 |
| 7106 | C | 09/01/99 | F | ROOM TAX | | 6.54 | 61.04 |
| 7106 | C | 09/02/99 | E | ROOM RENT | Th | 54.50 | 115.54 |
| 7106 | C | 09/02/99 | F | ROOM TAX | | 6.54 | 122.08 |
| 7106 | C | 09/03/99 | E | ROOM RENT | F | 54.50 | 176.58 |
| 7106 | C | 09/03/99 | F | ROOM TAX | | 6.54 | 183.12 |
| 7106 | B | 09/04/99 | G | 661-7179 | | 0.75 | 183.87 |
| 7106 | C | 09/04/99 | E | ROOM RENT | Sa | 54.50 | 238.37 |
| 7106 | C | 09/04/99 | F | ROOM TAX | | 6.54 | 244.91 |
| 7106 | A | 09/05/99 | L | CASH REC. | | 244.91 | 0.00 |
| 7106 | C | 09/05/99 | E | ROOM RENT | Su | 54.50 | 54.50 |
| 7106 | C | 09/05/99 | F | ROOM TAX | | 6.54 | 61.04 |
| 7106 | C | 09/06/99 | E | ROOM RENT | M | 54.50 | 115.54 |
| 7106 | C | 09/06/99 | F | ROOM TAX | | 6.54 | 122.08 |
| 7106 | B | 09/07/99 | G | 1-212-288-3522 1.1 | | 2.54 | 124.62 |
| 7106 | B | 09/07/99 | G | 16176557621 | | 1.80 | 126.42 |
| 7106 | C | 09/07/99 | E | ROOM RENT | T | 54.50 | 180.92 |
| 7106 | C | 09/07/99 | F | ROOM TAX | | 6.54 | 187.46 |
| 7106 | A | 09/08/99 | G | 212-288-3522 | | 4.04 | 191.50 |
| 7106 | A | 09/08/99 | G | 965-5298 | | 0.75 | 192.25 |
| 7106 | B | 09/08/99 | G | 19738871651 | | 2.94 | 195.19 |
| 7106 | C | 09/08/99 | E | ROOM RENT | W | 54.50 | 249.69 |
| 7106 | C | 09/08/99 | F | ROOM TAX | | 6.54 | 256.23 |
| 7106 | B | 09/09/99 | G | 1-212-661-8860 2.4 | | 3.05 | 259.28 |
| 7106 | C | 09/09/99 | G | 1-212-752-1594 1.9 | | 2.07 | 261.35 |
| 7106 | C | 09/09/99 | G | 1-212-724-3917 1.6 | | 2.07 | 263.42 |
| 7106 | C | 09/09/99 | G | 1-212-327-4875 1.1 | | 2.07 | 265.49 |
| 7106 | C | 09/09/99 | E | ROOM RENT | Th | 54.50 | 319.99 |
| 7106 | C | 09/09/99 | F | ROOM TAX | | 6.54 | 326.53 |
| 7106 | B | 09/10/99 | L | CASH REC. | | 326.53 | 0.00 |
| 7106 | B | 09/10/99 | G | 629-1717 | | 0.75 | 0.75 |
| 7106 | C | 09/10/99 | E | ROOM RENT | F | 54.50 | 55.25 |
| 7106 | C | 09/10/99 | F | ROOM TAX | | 6.54 | 61.79 |
| 7106 | C | 09/11/99 | E | ROOM RENT | Sat | 54.50 | 116.29 |
| 7106 | C | 09/11/99 | F | ROOM TAX | | 6.54 | 122.83 |
| 7106 | B | 09/12/99 | H | ATLANTIS | Su | 11.00 | 133.83 |

77

ExX

(f)   The husband is to file with the court an accounting of all expenses paid under item (a-e) before distributing to the parties the net proceeds.  Said accounting shall be simultaneously filed with the wife.  The wife shall within 15 days file any objections with the court.  If none are filed the husband shall disburse the net proceeds.

(g)   The net proceeds after the payment of the above expenses shall be divided 60 per cent to the wife and 40 per cent to the husband.

5.   The court orders joint custody to the parties meaning an award awarding legal custody of the minor children to both parents, providing for joint decision making by the parents and consultation on major issues.  The principle residence of the children shall be with their mother so that the mother shall have physical custody of the children all as defined in §46b-56a.  The husband shall have reasonable, flexible and liberal visitation with the children.

6.   The medical coverage shall be continued for the benefit of the children, and the husband shall be responsible for the reasonably necessary medical expenses of the children not covered by the insurance.  The husband shall keep the wife on his insurance policy for the maximum amount of time

A 118

-14-



Earle F. Cote, D.D.S., P.C.          $   50.00      #29481, 10/14/94
(Re: Leslie Hill, 06/15/94)

Earle F. Cote, D.D.S., P.C.          $   50.00      #29480, 10/14/94
(Re: Laura Hill, 04/15/94)

Earle F. Cote, D.D.S., P.C.          $1,100.00      #29479, 10/14/94
(Re: Jennifer Hill, 03/15/93
     to 07/15/94)

Spectacles                           $  246.00      Check Requested
(Re: Laura Hill, 09/24/93)                          10/24/94

Earle F. Cote, D.D.S., P.C.          $  672.29      Check Requested
(Re: Jennifer Hill, 04/15/94                        10/24/94
     to 07/15/94)

TOTAL BILLS PAID:                    $6,966.39


                              COHEN AND WOLF, P.C. TRUSTEE


                         By_____
                           Richard L. Albrecht
                           Cohen and Wolf, P.C.
                           1115 Broad Street
                           Bridgeport, CT  06604
                           (203) 368-0211  Juris #10032

100 79



06/11/94)

Greenwich Medical Group, Inc.          $   165.00        #29312,  9/15/94
(Re: Laura Hill, 05/24/93 to
    06/10/94)

Greenwich Orthopedic Assoc., P.C.      $   174.00        #29313,  9/15/94
(Re: Laura Hill, 09/10/93)

New England Pediatrics                 $    55.00        #29314,  9/15/94
(Re: James M. Hill, 05/11/94)

Richard C. Connors, M.D., P.C.         $    93.75        #29305,  9/15/94
(Re: Laura Hill & Jennifer Hill,
    12/13/93)

The Stamford Hospital                  $   205.03        #29394,  9/26/94
(Re: Jennifer Hill, 08/10/94)

Greenwich Hospital                     $1,455.66         #29398,  9/26/94
(Re: Laura Hill, 03/03/93 to
    08/04/94)

Greenwich Hospital                     $   787.56        #29399,  9/26/94
Re: James M. Hill, 11/08/93
    to 09/09/94)

Associates of Otolaryngology           $   181.00        #29397,  9/26/94
(Re: Jennifer Hill, 4/6/93)

Greenwich Radiological Group, P.C.     $   217.10        #29395,  9/26/94
(Re: Laura Hill, 04/12/91 to
    06/28/94)

Greenwich Radiological Group, P.C.     $    56.00        #29396,  9/26/94
(Re: James M. Hill, 11/08/93
    to 09/02/94)

Marianne Tierney, RPT                  $    35.00        #29400,  9/26/94
(Re: Laura Hill, 09/04/93 to
    09/07/93)

EX# XL

NO. FA 91 0283614S          :   SUPERIOR COURT

LUBA N. HILL              :   JUDICIAL DISTRICT OF FAIRFIELD

VS.                       :   AT BRIDGEPORT

JAMES T. HILL             :   OCTOBER 24, 1994    *  concealed
                                                     1 200 000
                                                     bonus
                                                     income

### REPORT OF PAYMENT

The following medical bills for the parties' minor children have been paid from the parties' trust account as per order of this Court (Petroni, J.).

| Provider | Amount | Trustee Check No./Date |
|---|---|---|
| Grannick's Pharmacy (Re: Laura Hill, 06/10/94) | $ 6.00 | #29306, 9/15/94 |
| Charles W. Jensen, Jr., DDS, P.C. (Re: Jennifer Hill, 12/08/93 to 03/25/94) | $ 910.00 | #29307, 9/15/94 |
| Charles W. Jensen, Jr., DDS, P.C. (Re: Leslie Hill, 12/09/93 to 08/23/94) | $ 163.00 | #29308, 9/15/94 |
| Charles W. Jensen, Jr., DDS, P.C. (Re: James M. Hill, 12/06/93 to 08/24/94) | $ 138.00 | #29309, 9/15/94 |
| Charles W. Jensen, Jr., DDS, P.C. (Re: Laura Hill, 12/09/93) | $ 45.00 | #29310, 9/15/94 |
| Greenwich Medical Group, Inc. (Re: Jennifer Hill, 04/19/94 to | $ 161.00 | #29311, 9/15/94 |

COHEN AND WOLF, P.C. • ATTORNEYS AT LAW • 1115 BROAD STREET • P.O. BOX 1821 • BRIDGEPORT, CONNECTICUT 06601 • JURIS NO. 11032

| | 93 | | | hid | 94 | | hid | 95 | | | 96 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4/22 | 11/17 | 12/30 | | 3/30 | 12/14 | | 2/1 | 3/22 | 4/11 | EX |
| fed | 913 | 913 | 1723 | | 1596 | 1601 | | 1724 | 1724 | 1724 | N/I |
| st | 188 | 188 | 188 | | 188 | 239 | | 298 | 298/365 | 298 | |
| ss | 426 | | | | 403 | 403 | | 431 | 431 | 431 | |
| med | 100 | 100 | 100 | | 100 | 100 | | 101 | 101 | 101 | |
| 3/D | 18 | 18 | 18 | | 18 | 18 | | 115 | 82 | 82 | |
| cath | 297 | 297 | 291 | | 356 | 356 | | 396 | 429 | 429 | |
| RS | | | | | | 200 | 200 | | | | |
| led | 2002 | 1576 | 2386 | | 2721 | 2977 | | 3265 | 3430 | 3065 | |
| GMI | 6875 | 6875 | 6875 | | 6875 | 6875 | | 7292 | 7292 | 7292 | |
| VMI | 5170 | 5299 | 4489 | | 4154 | 3898 | | 4026 | 3862 | 4227 | |
| VWI his | 1193 | 1223 | 1036 +1364 | | 959 | 900 +2356 | | 929 | 891 | 1032/975 | his met J.H |
| ny. rep. | 960 | 1035 | 1035 | | 1035 | 1035 | | 1035 | 1035 | 730 ½B | his share my L.H |
| | 6/8 | 11/17 | | | | | | | | 6/7 | |
| 1° | 801. | 851. | 100". | | 1081. | 1151. | | 1111. | 1161. | 751. | My percentage " |
| .y | | 82,500 | 60000 B | 82,500 | | 122,500 | | 81,504 | | B | B |
| | | | T=142,500 | | | T= 205,000 | | | | | |
| /L | 3/93 | 15000 | | | 3/94 | 15000 | | | | | |
| | 6/93 | " | | | 6/94 | 15000 | | | | | |
| | 8/93 | " | | | 8/94 | 32,500 | | | | | |
| | 11/93 | " | X | | 9/94 | 10000 | | | | | |
| | | | | | 12/94 | 50,000 | | | | | |
| | | 60,000 hidden | | | | 122,500 X hidden | | | | | |
| % | 44 | 1,364 | W + | | % 52 | 2356 W + | | | | 11/1/96 prepared in | |
| | | | W = 3,239 | | | W=3942 | | | | 9.9 6.00 | |
| 3 | 31,050 | W = 706 ↓ | | | 94 46,575 | W=896 ↓ | 95 20440 | W=393 | 82 | | |

Ex XIR

False financial affidavits:
9/1/91 - 0 income + paid American
Express $11,517
2/21/92 - $783 - he received 2/5/92
Aetna check of $12,285 + paid
country club $4300 for 3 months
4/22/93 - $1193 - actual $6,392 - hid
+ lied about $15000 n 3/30/93
11/17/93 - $1,223 - actual $2,932 - hid
+ lied about $30,000 n 6/10 + 9/1/93
12/30/93 - $1,036 - actual $6,432 - hid
+ lied about $15000 n 12/7/93
3/30/94 - $959 - actual $5,993 - hid
+ lied about $15000 n 3/7/94
12/14/94 - $900 - actual $3,275 - hid
+ lied about $57,500 n 5/27, 8/94
+ 9/12/94
2/1/95 - $929 - actual $13,932 - hid
+ lied about $50,000 n 12/94
3/22/95 - $891 - actual $1,432 +
more
4/11/95 - $975 - actual $1,432 +
more
10/31/96 - $1,058 - actual $1,432 +
more

File also has 2 different
2/1/95 financial affidavits
showing different incomes + bonuses

you mailed to your wife, your return address so that if it wasn't delivered it would come back to you?

MR. HILL:   Yes.   It went out in a Ryan Beck envelope.

THE COURT:   Did you ever get one back from the Post Office?

MR. HILL:   No.

THE COURT:   Go ahead, Mr. Albrecht.

## CROSS-EXAMINATION BY MR. ALBRECHT

Q.   These are Postal Money Orders?

A.   Yes.

Q.   So, if they were cashed, there would be a record of them being cashed.

A.   I would hope so.   I don't know what you have to do to find that out.

Q.   Let me ask a question:   Do you know whether or not the New Jersey Court made a finding of an arrearage?

A.   No, I was not present.

Q.   But, they had to make some kind of a finding of an arrearage to order you to pay more than the Order; right?

A.   I think I probably told them that there was a small arrearage which there was at that time because clearly I had not made a payment----

Q.   You don't know whether or not they made a finding, though?

A.   No, I don't think that they made a monetary finding.

Q.   You weren't there; were you?

Q.   But before December 1 of '95 you were sending those payments to 47 Lafayette Place?

A.   That's what my records show, yes.

Q.   Why would you send them there if your wife had not seen that apartment or moved into that apartment?

A.   That was the address I understood you were living at.

Q.   What do you mean by understand?  Who led you to believe that we were living there?

A.   I must have gotten it off Court papers.

Q.   Mr. Hill, I think all the papers in the files up to December 1 will indicate the address 191 Lake Avenue which is our old address.   Are you aware that your family was living in a hotel from September 1 of '95 to December 1 of '95?

A.   I was not aware of specifically where you were living. This is what I was told where it should be sent.

Q.   So, you are stating in Court in front of Judge Novack that you were sending these payments to 47 Lafayette Place before Mrs. Hill either saw or rented the apartment?

MR. ALBRECHT:  Objection.

A.   No, that's not what I said.

MR. ALBRECHT:  He said that he just sent them to that address.

Q.   I'm sorry.  I'll rephrase that.  You're stating that you sent these payments to 47 Lafayette Place?

A.   Yes.

Q.   When did you start sending them, again, for the record?

A.   In June.

Q.    Where were these sent to?  Did you hand deliver these
or did you mail them?

A.    I mailed them to you.  In fact, what I have here are
slips that were sent out registered mail.

Q.    What address did you send your 9/22 payment to?

A.    They were all sent to the same place because I believe
that you were living at the same place.  On 9/22, 47 Lafayette,
Apt. 6A, Greenwich 06830.

Q.    I'm sorry.  You may have misunderstood me.  I'm talking
about 9/22 of '95.  Where did you send that to?

A.    That's the address.

Q.    May I see that, please?

A.    Sure.  Isn't that where it should have been sent?

Q.    May I ask where you sent your next payment of 10/20/95?


A.    Same address.  They were all sent there.

Q.    When did you start sending them to 47 Lafayette
Place?

A.    Back in June.

Q.    June of '95?

A.    Yes.

Q.    Mr. Hill, do you have the date of when your children
moved into 47 Lafayette Place?

A.    No, I do not.

Q.    Do you know whether I would be correct in stating that
your family moved into 47 Lafayette Place on December 1 of '95?

A.    I have no knowledge of that.

99

THE COURT:  Oh, from New Jersey?

MR. ALBRECHT:  Yes, I just want to see what he was talking about.

THE COURT:  I'll take a look at it while Mrs. Hill is asking the questions.

## CONTINUED DIRECT EXAMINATION BY MRS. HILL

Q.   Mr. Hill, could you have a seat, please?  Mr. Hill, how did you make these payments?

A.   With Postal Money Orders.

Q.   Do you own a checking account?

A.   Not really, no.

Q.   You don't have any checking account?

A.   No.

Q.   Do you have any records of any of these payments?

A.   Yes.  I should have records at home.

Q.   Excuse me, Mr. Hill.  Do you have copies of the Money Orders here with you?

81

A.   No, I don't have them here with me today.

 **Zillow.com**
Your Edge in Real Estate

*EX XIV*

## 9 Woodside Rd
**Greenwich CT 06830**
5 beds, 7.0 baths, 7,800 sq ft
Recently Sold: $10,950,000
My Estimate:

**Monthly Payment: $ 58,629** edit

**Bird's Eye View**



**Home Info**

**Public Facts:**
- Single family
- 5 beds
- 7.0 bath
- 7,800 sqft
- Lot 94,525 sqft
- Built in 1930

**Neighborhood: 06830**

**Nearby Schools:**

**District:**
  Greenwich School ...
**Primary:**
  Julian Curtiss Eleme ...
**Middle:**
  Central Middle Schoo ...
**High:**
  Greenwich High Schoo ...

See more 06830 local information
See more Greenwich schools

**Charts & Data**

**ZESTIMATE®: $9,651,000**
Value Range: $8,010,330 -
$10,905,630
30-day change: -$358,000
*Zestimate updated: 01/21/2009*



**Last sale and tax info**

**Sold 07/25/2008:**

*88*



 **Zillow.com**
Your Edge in Real Estate

## 70 Midwood Rd
**Greenwich CT 06830**
8 beds, 8.5 baths, 8,780 sq ft
Zestimate®: $7,068,500

**My Estimate:**

**Monthly Payment: $ 37,652** edit

**Bird's Eye View**



**Home Info**

**Owner Facts:**
- Single family
- 8 beds
- 8.5 bath
- 8,780 sqft
- Lot 101,059 sqft
- Built in 1937

**At-a-Glance Features:**
- Double Pane Windows
- Fireplace
- Garden
- Intercom
- Pool
- Security System
- more

**Neighborhood: Deer Park**

**Nearby Schools:**

**District:**
    North St/Central MS
**Primary:**
    North Street
**Middle:**
    Central
**High:**
    GHS

See more 06830 local information
See more Greenwich schools

89



### 7 Sea View Ln
Newport Coast CA 92657
-- beds, -- baths, -- sq ft
Zestimate®: $3,751,500

**My Estimate:**

**Monthly Payment: $ 18,116** edit

**Bird's Eye View**



**Home Info**

**Public Facts:**
- Single family

**Neighborhood: 92657**

**Nearby Schools:**

**District:**
--
**Primary:**
Newport Coast Elemen ...
**Middle:**
Thurson Middle Schoo ...
**High:**
Corona del Mar High ...

See more Newport Coast schools

**Charts & Data**

**ZESTIMATE®:**
**$3,751,500**
Value Range: $3,563,925 -
$5,327,130
30-day change: $554,500
Zestimate updated: 01/19/2009



**Last sale and tax info**

**Sold 08/27/2001:**
$1,285,000 *
**2008 Property Tax:**
$16,594

* Transaction not included in

EX XV

3/25/93

total furniture sold:

29,000 - 18 pcs William Doyle
15,000 - sideboard - Tudor House Antiques
15,000 - 12 chairs - G.A. parent
5,000 - dining table - G.A. parent
800 - Guild Antiques
600 - antique shops
$65,400
5,000 - New Canaan Ruba Hill shop.
$70,400

I sold all of our antiques at 1/5 of the purchase value when he stopped paying $250 a week.

91

for 3/2/93

When he stopped paying
250 a week until 6/93
I sold furniture

furniture sold 29,000

+ 15,000

44,000

child support due
as of 3/5 = 4,000

16 weeks

chandelier 625 (950)
dollhouse 1000
train set 150

45,775.

## Money Spent

rent - Oct, Nov, Dec, Jan, Feb = 24,500 (4900)

Children -

| | | | |
|---|---|---|---|
| sneakers | 240 | James' blazer | 180 |
| shoes | 430 | " shirt | 35 |
| dress shoes | 280 | " pants | 30 |
| James' lunch | 120 | " afters | 100 |
| " supplies | 15 N/I | Laura xmas dance | 135 |
| " clothing | 230 | Leslie's xmas 92 gift | 225 |
| girls' uniforms | 450 | James' skates | 50 |
| Leslie's glasses | 162 | Laura's sweaters | 150 |
| | 1,912 | xmas tree | 130 |
| skating club | 770 | Laura xmas dinner | 60 |
| | 2,682 | Laura prom | 50 |
| | | N.Y.C. | 1000 |
| | | | 2,145 |

59   92

car -        _ + 500 ins
88 maintenance 710
81      "        1599
81    repair    3132
car rental     700
car insurance  887
road service    70
fine            60
              7,158

utilities + miscell -
newspapers - 68
phone         275
electricity   525
gas            80
alarm         100
garbage       150
gardener      400
water         136
            1,734

house -
insurance - 161

mine -
v. glasses - 200
subscriptions 200
            400

miscell -
haircuts 300 (50x
gifts    300 (50x
gastolls 1320 (40x
Boston    50
food, miscell 16,500 (50x
            18,470

family -
cleaners - 500

60   93

Antique money

furniture money                                    70,400
Child support received (40-18 = 22 w)               5,500
                                                   ─────────
                                                   75,900


11 months rent (4900)                              53,900
3 months paid by account                         - 14,700
                                                  ─────────
                                                   39,200


money available                                    75,900
rent paid by me                                  - 39,200
                                                  ─────────
                                                   36,700
11 months of expenses (4,668 mo)                 - 51,348
                                                  ─────────
                                                 - 14,648
Dana & Alex lent me                              +  7,500
my debt.                                          ─────────
                                                 -  7,148

62   94

<u>recap</u>

rent -        24,500
children -    4,827.
car     -     7,158
utilities  -  1,734
house   -      161
mine    -      400
family  -      500
miscell  -   18,470
              57,750      money spent.
$ 59,275 {    4,500      18 weeks of $250 July 17-Nov 13
             45,775      money received
          —   7,475      owe Lana & Alex
(life ins pay.)  261     gave stereo set Dec 23.
             $ 7,736

child support due me Nov 20 - March 5 -
        $4000 - 16 weeks

rent due March 14.
will be turned off  - phone  alarm service,
                      electricity.
will be cancelled  -  car insurance)

101   95

We gave daddy the list and he copied it down. He said he would think about it and give it to his lawyer.

E X XVI

1.) Sneakers : Leslie = 55
Jennifer = 60
Laura = 60
James = 65
Total = 240

School Shoes : Leslie = 50
Jennifer = 120
Laura = 120
James = 140
Total = 430

Other shoes : Jennifer — Cleats = 80
" Party shoes = 100
Leslie " " = 100

Grand Total : 950

2.) James = lunch money = $291.20

taken care ✓ 3.) James = school supplies = 15
of

4.) James = socks & underwear = 30

5.) James = 3 pairs of pants = 75

6.) James = 5 tops = 125

7.) uniforms = 450

96

PLAINTIFF'S EXHIBIT
216
NO.

8.) Leslie = Glasses = 162

9.) Book bags = 100

Daddy said the lawyers would take care of it, and that he didn't have the money. He said that it was unfair of you, to ask us, to ask him, for money. He said we should stand up to you, other wise you would keep using us.


He never called to see how James's first day of school went. He never called back on my birthday, he only left a message on the machine. He didn't call on James's second day of school.

EX
XVII

Incorrect Support given on false
financial affidavits

9/1/91 - 0           250

2/21/92 - 183

4/22/93 - 1193      960      80 %

11/17/93 - 1,223    1,035    85 %

12/30/93 - 1,036    1,035    100 %

3/30/94 - 959       1,035    108 %

12/14/94 - 900      1,035    115 %

2/1/95 - 929        1,035    111 %

3/22/95 - 891

4/11/95 - 975

10/31/96 - 1,058

**SUPERIOR COURT OF NEW JERSEY, CHANCERY DIVISION, FAMILY PART**
**ESSEX VICINAGE**

_Luba Hill_

E. C. D. W. / OBLIG / PLAINTIFF

VS.

_JAMES Hill_

OBLIG / DEFENDANT

**CIVIL ACTION ORDER**
**NON - DISSOLUTION**

DOCKET NO: _FD 07-6035-96_
WELFARE NO:
PROBATION NO: _CS33546526A_

This matter being before the Court on a Complaint /Motion for:

| | | | |
|---|---|---|---|
| _____ Paternity | ✓ | Support - Entry or Order / Modification | |
| _____ Custody | _____ | Child Abuse Neglect | |
| _____ Visitation | _____ | Termination of Parental Rights | |
| _____ Enforcement | _____ | Other | |

and good cause having been shown, it it on this **3** day of **May**, 19**98** ORDERED that:

1. The Defendant / Obligor _____ admits _____ denies paternity. HLA Ordered.

2. The Defendant / Obligor is the father of the following child (ren):

   NAME _____ DOB _____ NAME _____ DOB _____

3. The defendant / Obligor, shall pay to the Essex County Probation Department the sum of $ _____
   effective _____ 19 _____ unallocated/allocated $ _____ for spouse $ _____ per child _____
   Beneficiary _____

4a. The defendant / Obligor shall provide medical and/or dental insurance covering said children/spouse whenever available through employment.

4b. The defendant / obligor shall pay excess of medical and /dental expense over insurance.

5. Arrears are fixed at $ _____ as of _____ , 19 _____ To be paid _____
   directly or _____ payment through Essex County Probation at $ _____ per: _____
   Effective _____ , 19 _____ Beneficiary _____

✓ 6. An income execution shall be issued to _Ryan, Beck + Co. Inc. 80 Main St_ (specify income source) in the amount of
   $ _1035_ per _Week_ effective _5/31_ , 19 _96_ _West Orange, NJ 07052_

7. Custody of minor child (ren) _____
   is granted to _____

8. Visitation with _____
   is granted to _____ as follows: _____

9. Reschedule on _____

10. Refer to: _____ Welfare _____ Probation (reason): _____

11. Best Interest of Children Investigation Ordered - Comments: _____

12. Complaint dismissed _____ Reason: _____

13. Order of: _____ 19 _____ Continued _____ Suspended _____

✓ 14. Default entered: The defendant/obligor was properly served and has not appeared or answered. Accordingly default
   is entered as in above paragraphs.

15. Appearances: ✓ Plaintiff _N/A_ Defendant _____ Other (Specify) _Michele Crossl, Esq_

16. Bench Warrant shall be issued _____ Hold _____

✓ 17. Other: _All defendant's income from bonuses salary
   and commissions or otherwise earned by him
   from Ryan Beck + Co. shall be included in this
   wage execution. Also included in this wage
   execution is any loan or loans made by
   Ryan Beck + Co to defendant which Ryan Beck + Co
   forgives. If the amount of this wage execution is_

_Plaintiff being on alimony and support arrearage of 5/1/96 the m of 59,255_

_subsequently reduced pursuant to provisions of
the Federal and/or New Jersey wage garnishment
statutes, defendant is directed to pay the difference
between the ___ amount ____

FOR CONSENT CONFERENCE ONLY
WE HEREBY CONSENT TO THE ABOVE ORDER

PLAINTIFF/OBLIG _____ DATED _____

DEFENDANT/OBLIGOR _____ DATED _____

99 _Edward R. Schwartz_
JUDGE, SUPERIOR COURT   DATED _5/3/96_

SO RECOMMENDED HEARING OFFICER   DATED

THE LAW OFFICES OF
# JOHN R. WILLIAMS

51 ELM STREET, SUITE 409
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
FACSIMILE (203) 776-9404

JOHN R. WILLIAMS
DIANE POLAN
KATRENA ENGSTROM
NORMAN A. PATTIS
WILLIAM S. PALMIERI

MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT

LESLIE ARTHUR
OFFICE MANAGER

January 17, 1995

Northeast Utilities
Attention: Gail

        Re:  Luba Hill

Dear Friends:

    Ms. Luba Hill has been a client of this law firm for the past two years.  Ms. Hill is, to our certain knowledge, not employed, her only income deriving from child support which is in arrears ten weeks. The sum in arrearage is currently $10,350.00.

    Ms. Hill's former husband is in contempt of court and there are several contempt matters in this case before the Superior Court, Judicial District of Fairfield at Bridgeport, scheduled to be heard later this week.  We ask at this time that Ms. Hill's utilities be continued and assure you that we will be happy to be contacted to give you the status of Ms. Hill's financial situation.

    Please call our office if you have any further concerns with regard to this matter.

                        Sincerely,

                        JOHN R. WILLIAMS

JRW:laa
1-203-665-2032

THE LAW OFFICES OF
# JOHN R. WILLIAMS

51 ELM STREET, SUITE 400
NEW HAVEN, CONNECTICUT 06510

(203) 562-9931
FACSIMILE (203) 776-9494

JOHN R. WILLIAMS
DIANE POLAN
KATRENA ENGSTROM
NORMAN A. PATTIS
WILLIAM S. PALMIERI

MARY ANN POTONIEC
ADMINISTRATIVE ASSISTANT
LESLIE ARTHUR
OFFICE MANAGER

RE: LUBA HILL V. JAMES HILL

December 5, 1994

TO WHOM IT MAY CONCERN:

This office represents Luba Hill in post-divorce proceedings to collect late payments of child support and alimony orders issued in Connecticut.

At the present time, Mr. Hill has failed to pay child support and alimony since October 28, 1994, and the arrears are approximately $6,000.

We filed motions to enforce previous orders and went to court on December 1. The next court date for a hearing on these matters is December 14, and we anticipate that Mr. Hill will make a lump sum payment on or before that date, since he is fiancially capable of doing so.

Sincerely,

KATRENA ENGSTROM

EXBX

NO. FA 91 0283614S        :  SUPERIOR COURT

LUBA N. HILL             :  JUDICIAL DISTRICT OF FAIRFIELD

VS.                      :  AT BRIDGEPORT

JAMES T. HILL            :  ~~DECEMBER 14, 1994~~  Feb 1, 1995

COHEN AND WOLF, P.C.  •  ATTORNEYS AT LAW  •  (203) 368-0211  •  JURIS NO. 10032

1115 BROAD STREET  •  P. O. BOX 1821  •  BRIDGEPORT, CONNECTICUT 06601

## SWORN FINANCIAL STATEMENT OF DEFENDANT JAMES T. HILL

I.   **INCOME**

A.   Income from Principal Employment:

Name of Employer: Ryan, Beck & Co., Inc.

Gross Monthly Income:  1724.00  1,725.00

$ 7291.00  ~~7,292.00~~

$ ~~6,875.00~~

LESS DEDUCTIONS:

| | | |
|---|---|---|
| Federal Tax | $ ~~1,601.00~~ | 298.00 |
| State Tax | $ ~~239.00~~ | |
| Social Security | $ ~~403.00~~ | 431.00 |
| Medicare | $ ~~100.00~~ | 101.00 |
| SUI/DI | $ ~~78.00~~ | 115.00 |
| Health Insurance | $ ~~356.00~~ | 356.00 |
| IRS Installment | $ 200.00* | 3265.00 |
| Total Monthly Deductions: | $ ~~2,977.00~~* | |

4026.00

Net Monthly Income:                          $ ~~3,898.00~~*

Less:

**Bonus:** Received as reduction in loan
   in August, 1994 ($32,500) and
   December, 1994** ($50,000)

   Gross:                    $82,500.00
   Less Est. Taxes (36.5%)    30,113.00
   Net Annual Bonus          $52,387.00

   Monthly Average Net Bonus                $ ~~4,366.00~~

C.   **Total Net Monthly Income All Sources**
     **(Total A & B)**                       $ ~~8,264.00~~

_____

*  ~~Effective January 1, 1995~~
** ~~To be received by December 19, 1994~~

161   102

FP
91
028S
3614S
PLAINTIFF'S
EXHIBIT
Hill v. Hill
2/1/95
NO.  A  JD

EX XX
XX

NO. FA 91 0283614S          :   SUPERIOR COURT

LUBA N. HILL              :   JUDICIAL DISTRICT OF FAIRFIELD

VS.                      :   AT BRIDGEPORT

JAMES T. HILL            :   FEBRUARY 1, 1995

## SWORN FINANCIAL STATEMENT OF DEFENDANT JAMES T. HILL

I.   **INCOME**

    A.   <u>Income from Principal Employment</u>:

Name of Employer: <u>Ryan, Beck & Co., Inc.</u>
Gross Monthly Income:                                    $  7,291.00

LESS DEDUCTIONS:
Federal Tax              $1,724.00
State Tax                $  298.00
Social Security          $  431.00
Medicare                 $  101.00
SUI/DI                   $  115.00
Health Insurance         $  396.00
IRS Installment          $  200.00
Total Monthly Deductions:           $  3,265.00

Net Monthly Income:                                      $  4,026.00


LESS:
Monthly Alimony          $1,581.65
Monthly Child Support:    2,903.31
Other Court Ordered
 Support Payments
 (Insurance):                443.58
Total Court-Ordered Monthly payments:          $  4,928.54

    C.   **Total Net Monthly Income All Sources**          **($902.54)**
        **(Total A & B)**

1115 BROAD STREET • P. O. BOX 1821 • BRIDGEPORT, CONNECTICUT 06601 • ATTORNEYS AT LAW • (203) 388-0211 • JURIS NO. 10032
COHEN AND WOLF, P.

162
103

Ex. XXI

NO. FA 96 0152666S     :   SUPERIOR COURT

LUBA N. HILL     :   J. D. OF STAMFORD/NORWALK

-VS.     :   AT STAMFORD

JAMES T. HILL     :   OCTOBER 31, 1996

## SWORN FINANCIAL STATEMENT OF DEFENDANT JAMES T. HILL

I. **INCOME**

    A.   Income from Principal Employment:

Name of Employer:   Ryan, Beck & Co.
Address:           80 Main Street
               West Orange, NJ  07052

Gross Monthly Income:                $  7,291.67

LESS DEDUCTIONS:

| | |
|---|---|
| Federal Tax | $1,642.07 |
| NJ State Tax | $   134.64 |
| Social Security | $   436.61 |
| Medicare | $   102.11 |
| SUI/DI | $    82.03 |
| Health & Disability Insurance | $   309.08 |
| Wage Execution for Child Support & Alimony | $3,288.79* |

Total Monthly Deductions:          $  5,995.33

Net Monthly Income:                $  1,296.34

*Composed of weekly payments of alimony and child support of $730.00 per week and $125.48 applied towards arrearage.

EX
XXII

NO. FA 91 0283614S                :    SUPERIOR COURT

LUBA N. HILL                      :    JUDICIAL DISTRICT OF FAIRFIELD

VS.                               :    AT BRIDGEPORT

JAMES T. HILL                     :    DECEMBER 14, 1994

## SWORN FINANCIAL STATEMENT OF DEFENDANT JAMES T. HILL

**I.   INCOME**

    **A.   Income from Principal Employment:**

Name of Employer: Ryan, Beck & Co., Inc.
Gross Monthly Income:                                      $  6,875.00

LESS DEDUCTIONS:
Federal Tax              $1,601.00
State Tax                $  239.00
Social Security          $  405.00
Medicare                 $  100.00
SUI/DI                   $   78.00
Health Insurance         $  356.00
IRS Installment          $  200.00*
Total Monthly Deductions:            $  2,977.00*

Net Monthly Income:                                        $  3,898.00*

    **Bonus:**  Received as reduction in loan
      in August, 1994 ($32,500) and
      December, 1994** ($50,000)

      Gross:                        $82,500.00
      Less Est. Taxes (36.5%)        30,113.00
      Net Annual Bonus              $52,387.00

      Monthly Average Net Bonus                $  4,366.00

    **C.   Total Net Monthly Income All Sources**
      **(Total A & B)**                            $  8,264.00

---

\*   Effective January 1, 1995
\*\*  To be received by December 19, 1994

COHEN AND WOLF, · ATTORNEYS AT LAW · JURIS NO. 10032
1115 BROAD STREET · P. O. BOX 1821 · BRIDGEPORT, CONNECTICUT 06601 · (203) 358-0211

## § 4913.5

### FAMILY CODE

modification of an existing order. If one of the parties resides outside the forum State, the nonresident may avail himself or herself of the special evidentiary and discovery provisions provided by UIFSA.

Except for the three sections specified, the provisions of UIFSA—its title labels it an interstate act—are not applicable to an intrastate proceeding. The first exception allows the tribunal to apply the special rules of evidence and procedure of Section 316 [4930] in order to facilitate decision-making when one party resides in another State. The improved interstate exchange of information enables the nonresident to participate as fully as possible in the proceedings without the necessity of personally appearing in the forum State. The same considerations account for authorizing inter-tribunal communications as per Section 317 [4931]. Finally, the two-state discovery procedures of Section 318 [4932] are made applicable in a one-state proceeding when a foreign tribunal can assist in that process. In all other situations, the ordinary substantive and procedural law of the forum State applies to a one-state proceeding. In sum, the parties and the tribunal in a one-state case may utilize those two-state procedures that contribute to economy, efficiency, and fair play.

Finally, the 2001 amendment recognizes and extends the operation of these evidentiary and discovery provisions to a case involving a foreign support order recognized on the basis of comity.

### § 4914. Continuing, exclusive jurisdiction to modify spousal-support order

(a) A tribunal of this state issuing a spousal support order consistent with the law of this state has continuing, exclusive jurisdiction to modify the spousal support order throughout the existence of the support obligation.

(b) A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state.

(c) A tribunal of this state that has continuing, exclusive jurisdiction over a spousal support order may serve as either of the following:

(1) An initiating tribunal to request a tribunal of another state to enforce the spousal support order issued in this state.

(2) A responding tribunal to enforce or modify its own spousal support order. *(Added by Stats.2002, c. 349 (A.B.2934), § 11.)*

#### Contingent Operation

*Stats.2002, c. 349 (A.B.2934), becomes operative upon either of two specified events, whichever occurs first, but in no event prior to July 1, 2004, under the terms of § 47 of that Act.*

#### Uniform Interstate Family Support Act Comment (2001)

This is not new language; a 2001 amendment moved former Section 205(f) [4909] to this stand-alone section. Complementary provisions with regard to other aspects of CEJ over a spousal support order are also moved. An order for spousal support is treated differently than an order for child support. The issuing tribunal retains continuing, exclusive jurisdiction over an order of spousal support throughout the entire existence of the support obligation. Sections 205(f) and 206(c) [4909 and 4910] state that

288

the procedures of UIFSA are not available to a responding tribunal to modify the existing spousal support order of the issuing State. This marks a radical departure from RURESA, which treated spousal and child support orders identically. Under UIFSA, "interstate" modification of spousal support is limited to a procedure whereby a proceeding may be initiated outside of the issuing State, but only the tribunal in the original issuing State may modify the order under its law. This approach was expected to have minimal effect on actual practice, a prediction that appears to have been accurate. Interstate modification of pure spousal support was relatively rare under RURESA, and plays almost no part in the activities of support enforcement agencies.

The prohibition of modification of spousal support by a nonissuing state tribunal under UIFSA is consistent with the principle that a tribunal should apply local law to such cases to insure efficient handling and to minimize choice of law problems. Avoiding conflict of law problems is almost impossible if spousal support orders are subject to modification in a second State. For example, States take widely varying views of the effect on a spousal support order of the obligee's remarriage or nonmarital cohabitation. Making a distinction between spousal and child support is further justified because the standards for modification of child support and spousal support are very different. In most jurisdictions a dramatic improvement in the obligor's economic circumstances will have little or no relevance in a proceeding seeking an upward modification of spousal support, while a similar change in an obligor's situation typically is the primary basis for an increase in child support. This disparity is founded on a policy choice that post-divorce success of an obligor-parent should benefit the obligor's child, but not the obligor's ex-spouse.

Finally, UIFSA does not provide for shifting the continuing, exclusive jurisdiction over a spousal-support order by mutual agreement. That procedure is limited to child support under Section 205(b)(1) [4909]. Note that the Act is silent rather than preclusive on the subject. If the parties wish to enter into such an agreement, it is up to the individual States to decide whether to recognize it. A waiver of continuing, exclusive jurisdiction and subsequent modification of spousal support by a tribunal of another State simply is not authorized by UIFSA, rather than prohibited.

### ARTICLE 3.   CIVIL PROVISIONS OF GENERAL APPLICATION

Section
4915.   Proceedings.
4915.   Proceedings.
4916.   Action by minor parent.
4917.   Application of law of state.
4917.   Application of law of state.
4918.   Duties of initiating tribunal.
4918.   Duties of initiating tribunal.
4919.   Duties and powers of responding tribunal.
4919.   Duties and powers of responding tribunal.
4920.   Inappropriate tribunal.
4920.   Inappropriate tribunal.
4921.   Duties of support enforcement agency.
4921.   Duties of support enforcement agency.
4922.   Duty of Attorney General.
4922.   Duty of Attorney General; reciprocal arrangement established by foreign country or political subdivision; notification of determination.
4923.   Private counsel.
4924.   Duties of state information agency.

XXIV

NO. FA 91 0283614S : SUPERIOR COURT
LUBA HILL                 : JUDICIAL DISTRICT OF FAIRFIELD
      VS.                      : AT BRIDGEPORT
JAMES T. HILL           : APRIL 12, 1995

### Motion to Reopen Judgments Based on Fraud

During court hearings on Dec. 14 and Dec. 15 of 1994 and on the financial affidavit of Dec. 14, 1994 of the defendant, James Hill, it was discovered that the defendant had <u>not</u> reported additional income of $32,500 that he received in August, 1994. (The defendant also mentioned that by December 19, 1994, he would be receiving an additional income of $50,000 of which he would only net in the $3,000's.)

During Court hearings on April 11, 1995, the defendant admitted in testimony that since his employment on 3/3/93, he has received additional income on 3/31/93, $15,000, 6/10/93, $15,000, 8/31/93, $15,000, 11/30/93, $15,000, 3/01/94, $15,000, 6/01/94, $15,000, 9/12/94, $10,000 and in August of 1994, $32,500, and in December of 1994, $50,000, (of which he would only net in the 3,000's.)

The defendant has ignored Judge John Moran's June 8, 1993 order that "the defendant is ordered to notify counsel of any borrowing against future bonuses. Same may constitute a change of circumstances."

Following a trial on March 10, 1992 the court entered a judgment of dissolution of the marriage on March 18, 1992. This included $250 a week child support and life time alimony of $1.00 a week (modifiable when the defendant found employment.)

The defendant started his employment on 3/3/93. The plaintiff was notified of his employment on 3/23/93 and filed her modification motion on 3/26/93. The court refused to hear her motions until May and June of 1993. His 4/22/93 financial

STATE OF CONNECTICUT
SUPERIOR COURT
JUDICIAL DISTRICT OF
FAIRFIELD

OCT 3 0 1995

CERTIFIED COPY
SEAL AFFIXED
BY _____
                                    CLERK

*E X [handwritten]*
*1/22/09 [handwritten]*

James T. Hill
P.O. Box 642327
Los Angeles, CA 90064
March 29, 1999

*hiding in Pacific [handwritten]*
*Palisades [handwritten]*
*5 bedroom [handwritten]*
*we were homeless [handwritten]*
*9/99 - 9/00 [handwritten]*

Richard L. Albrecht, Esq.
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06601

Dear Rick:

Pursuant to your call to me on March 24, 1999, enclosed is certain information you requested for purposes of the hearing on your motion for a charging lien.

I would like to note for the record that I have received from Ms. Luba N. Hill, the Plaintiff, no copies of motions with respcet to this matter and no notices regarding any hearings on this matter. Also, our telephone conversation in which you requested the information herein was the first we had spoken on this matter.

The Superior Court of New Jersey, Chancery Division - Family Part, for Essex County New Jersey entered a wage garnishment on May 6, 1996 effective on May 31, 1996 in the total amount of $780.00 per week consisting of $730.00 per week combined alimony and child support and $50.00 per week to be applied toward the arrearage as found by Judge Romeo G. Petroni of the Connecticut Superior Court in Bridgeport.  A copy of the New Jersey garnishment order is enclosed.

My employer in New Jersey, Ryan, Beck & Co., fully complied with the garnishment order from its effective date until my having left the firm on March 6, 1998.  Commencing with the period beginning on March 6, 1998, I have remitted promptly every two weeks the full $780.00 per week ($1,560.00 total every two weeks) directly to Ms. Hill in the form of United States Postal Services Money Orders sent to Ms. Hill at her residence via Registered Mail with return receipt. Copies of these Money Orders along with the signed mail receipts are enclosed; additionally, a chronology of the payment periods covered and the dates the payments were mailed is enclosed. As these records clearly demonstrate, all court ordered payments to Ms. Hill are current.

Pursuant to the New Jersey wage garnishment and the subsequent payments made directly by me, Ms. Hill has received (through and including the last payment for the period ending March 19, 1999) 146 weekly payments of $50.00 per week or a **total of $7,300 to be applied toward the arrearage.**

*so he would not have to show [handwritten]*

It should also be noted that given the arrearage I have chosen not to obtain a modification of the *income [handwritten]* support order, and **I have continued to pay in full to Ms. Hill weekly child support of $107.50** *[handwritten arrow]* **for each of my two adult daughters, Laura C. Hill (born 8/25/77) and Jennifer A. Hill (born**

Richard L. Albrecht, Esq.
March 29, 1999
Page 2

9/5/79), beyond their 18th birthday and despite the fact that they no longer live full time with Ms. Hill.   Through and including my last payment for the period ending March 19, 1999, this amounts to 185 weeks times $107.50 per week or a total of 19,887.50 with respect to Laura C. Hill and 131 weeks times $107.50 per week or a total of 14,082.50 with respect to Jennifer A. Hill and a **grand total for both adult daughters of $33,970.00**.

Given these payments, I believe that there is no arrearage, and I see no reason why the funds held in trust by Cohen and Wolf should not be distributed to the parties.

I fully expect to have proper notice of all proceedings by Ms. Hill in this matter.  I reaffirm that I have notice of your proceeding as to the agreed charging lien.

I hope that this information is adequate for your purposes.

Sincerely,

James T. Hill

Enclosures

109    95

the Plaintiff
by Luba Hill
Luba Hill
200 E 69 St. 6G
Ny Ny 10021
lnhill1chotmail.com

Certification

I hereby certify that in compliance with rules a copy of the foregoing has been sent to the following on 1/22/09:

James t. Hill
2 SeaView Lane
Newport Beach Ca
92657-1906

the Plaintiff
by Luba Hill
Luba Hill
200 E 69 St. 6G
Ny Ny 10021
lnhill1chotmail.cm

110